[No. S009472. Crim. No. 25539. July 24, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME JOSEPH MARKHAM, Defendant and Appellant.

**COUNSEL**

Kenneth J. Sargoy, under appointment by the Supreme Court, for Defendant and Appellant.

George L. Schraer as Amicus Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Andrew D. Amerson, Sharlene A. Honnaka, William T. Harter, Marc E. Turchin and Donald E. De Nicola, Deputy Attorneys General, for Plaintiff and Respondent.

Christopher N. Heard, Kent S. Scheidegger, Charles L. Hobson, John J. Meehan, District Attorney (Alameda), Thomas J. Orloff and William M. Baldwin, Assistant District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

EAGLESON, J.—In *People* v. *Jimenez* (1978) 21 Cal.3d 595, 605 [147 Cal.Rptr. 172, 580 P.2d 672], this court first adopted "as a judicially declared rule of criminal procedure" the requirement that at trial the People prove the voluntariness of a defendant's confession beyond a reasonable doubt. The United States Supreme Court had earlier held that the federal Constitution required only that the prosecution prove a confession voluntary by a preponderance of the evidence. (*Lego* v. *Twomey* (1972) 404 U.S. 477, 489 [30 L.Ed.2d 618, 627, 92 S.Ct. 619].)[1]

We granted review in this case to determine whether article I, section 28, subdivision (d) of the California Constitution (hereafter section 28(d))— commonly referred to as the "truth-in-evidence law" and adopted in 1982 as part-and-parcel of the ballot initiative popularly known as Proposition 8—has abrogated the *Jimenez* rule requiring a greater degree of proof of voluntariness than its federal counterpart.[2]

In conformance with the principles announced in *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307], and *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], we conclude that the *Jimenez* rule has been abrogated by section 28(d).

### FACTS

On the evening of June 18, 1984, two men robbed the Pacific Drugstore in Oxnard. Pharmacist Jue was unable to identify defendant as one of the

---

[1] For purposes of determining the voluntariness of a defendant's extrajudicial statement, the rule has been applied interchangeably to both incriminating admissions and confessions. (See, e.g., *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 753 [175 Cal.Rptr. 738, 631 P.2d 446]; *People* v. *Alfieri* (1979) 95 Cal.App.3d 533, 542 [157 Cal.Rptr. 304].)

[2] The United States Supreme Court has unequivocally reaffirmed that the federal preponderance-of-the-evidence standard announced in *Lego* v. *Twomey* applies both to a determination of voluntariness in the "traditional sense" (i.e., whether a confession was "coerced" by improper acts or overreaching on the part of the police)—*and* to a determination of whether a defendant's waiver of *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) was voluntary. (*Colorado* v. *Connelly* (1986) 479 U.S. 157, 168-169 [93 L.Ed.2d 473, 485-486, 107 S.Ct. 515].)

robbers. Ms. Kato, a patron, had been held with a knife to her throat by the taller of the two robbers during the episode. She was unable to identify defendant from a photographic lineup on the day of the robbery, but later identified him at the preliminary hearing as the shorter of the two robbers, although indicating she was not "absolutely sure." Another witness, Mrs. Ramos, was able to tentatively identify defendant from the photographic array.

Kato testified that during the robbery she heard the shorter robber state to Jue, "I need some Valiums or Thorazine." Jue testified the taller robber demanded "Dilaudid, Valium and the money in the till." The shorter robber then accompanied Jue to the rear of the store, where Jue gave him a bottle of Valium tablets. Jue recalled that the shorter robber "kind of apologized," stating that if he could he would return to repay him. Jue also turned over the money from the cash register to the robbers.

Defendant was arrested the following day by Officer Veto, who believed defendant was then under the influence of a depressant drug. (Pen. Code, § 647, subd. (f).) Detective McCowan interviewed defendant two hours later, after first advising him of his *Miranda* rights (*Miranda* v. *Arizona, supra,* 384 U.S. 436) and obtaining a waiver of those rights. Although it appeared to Detective McCowan that defendant was under the influence of some drug, the detective believed defendant understood his rights, and that his waiver was knowing and intelligent. McCowan based his conclusions in part on defendant's "logically consistent" answers to the questions asked. At no point during the ensuing interview did defendant ever indicate a desire to speak to a lawyer.

Detective McCowan told defendant that he had been tentatively identified as a participant in the drugstore robbery. Defendant then admitted to McCowan that he had obtained some Valium pills and change in the robbery, but claimed he was not the robber who had used a weapon. Defendant also stated he had told the pharmacist he would try to pay him back if he could. Evidence of these admissions was introduced over defense objection at the preliminary hearing. The magistrate ruled that the federal preponderance-of-the-evidence standard (see *Lego* v. *Twomey, supra,* 404 U.S. at p. 489 [30 L.Ed.2d at p. 627]) governed the determination of whether defendant's waiver of his *Miranda* rights was knowing, intelligent and voluntary. The magistrate indicated that if the state reasonable doubt standard applied (see *People* v. *Jimenez, supra,* 21 Cal.3d at p. 606), his ruling would have been otherwise. Defendant was bound over to superior court for trial on charges of robbery (Pen. Code, § 211) and burglary (Pen. Code, § 459).

After denial of a motion to set aside the information (Pen. Code, § 995), the matter was submitted to the court for decision on the preliminary

hearing transcript (see *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 602-604 [119 Cal.Rptr. 302, 531 P.2d 1086]), subject to a renewed objection to admission of defendant's incriminating statement. The trial court overruled the objection on the ground that Proposition 8 mandated use of the federal standard of proof by a preponderance of the evidence for determining the voluntariness of waivers. The court determined that the prosecutor had met that burden in establishing defendant's waiver as knowing and voluntary, and found defendant guilty as charged.[3]

The Court of Appeal affirmed on grounds that the principles of *Lance W.*, dealing with suppression of evidence under the Fourth Amendment, are equally applicable to suppression of evidence on Fifth Amendment grounds, and that the "truth-in-evidence law" is applicable to procedural aspects of self-incrimination.

## DISCUSSION

Section 28 (d) of the California Constitution provides: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and postconviction motions and

---

[3] The thrust of defendant's argument below was that because he was under the influence of a depressant drug at the time of his arrest and interrogation, his *waiver of his Miranda rights* was involuntary. The trial court concluded that the preponderance of the evidence established his waiver of rights to have been knowing, intelligent and voluntary. The record reflects he did not argue that as a result of his being under the influence of a drug he was unable to furnish a voluntary (i.e., volitional or coherent) statement.

At oral argument, however, appellate counsel suggested that either theory could support a finding of "involuntariness" on these facts, since the police officers' decision to *Mirandize* defendant and take his statement, given the circumstances, was itself an "exploitation" of his intoxicated state. We shall treat defendant's claim as one encompassing both grounds. Although the focus of defendant's motion was that the circumstance of his having been under the influence of a drug rendered his *waiver of rights* involuntary, such a claim would be inextricably intertwined with an assertion that his incriminating statement—following closely as it did on the heels of his *Miranda* waiver—was itself involuntary due to his intoxicated state.

We observe that in earlier cases, this court had applied the *Jimenez* beyond-a-reasonable-doubt standard interchangeably to test both the voluntariness of confessions in the traditional sense, as well as the voluntariness of *Miranda* waivers. (See *People* v. *Murtishaw, supra*, 29 Cal.3d 733, 753; *People* v. *Braeseke* (1979) 25 Cal.3d 691, 701 [159 Cal.Rptr. 684, 602 P.2d 384].)

Moreover, in *Colorado* v. *Connelly, supra*, 479 U.S. 157, the Supreme Court stated unequivocally: "We now reaffirm our holding in *Lego*: Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence. [Citations.] If, as we held in *Lego* v. *Twomey, supra*, the voluntariness of a confession need be established only by a preponderance of the evidence, then a waiver of the auxiliary protections established in *Miranda* should require no higher burden of proof." (*Id.*, at pp. 168-169 [93 L.Ed.2d at p. 485].)

hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press."

In *In re Lance W., supra,* 37 Cal.3d 873, this court held that the adoption of section 28(d) abrogated California's vicarious exclusionary rule and instead required application of the federal rule denying such standing. We explained that: "[I]n the absence of express statutory authority therefor courts may not exclude evidence seized in violation of either the state or federal Constitution unless exclusion is compelled by the federal Constitution. . . . [¶] Implicit in the limitation on the courts' power to exclude relevant evidence to the enumerated statutory exceptions is a limitation on the power of the court to create nonstatutory exclusionary rules, whether denominated rules of procedure, rules of evidence, or substantive rules, for the exclusion of unlawfully seized evidence if those rules afford greater protection to a criminal defendant than does the Fourth Amendment." (*Id.,* at pp. 888-889, fn. omitted.)

In 1988 we decided *People* v. *May, supra,* 44 Cal.3d 309, holding that Proposition 8 abrogated the rule of *People* v. *Disbrow* (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272], which had held inadmissible for impeachment purposes a defendant's extrajudicial statements elicited in violation of his *Miranda* rights. We reinstated the pre-*Disbrow* federal rule set forth in *Harris* v. *New York* (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643], permitting impeachment of a defendant, who elects to testify in his own behalf, with extrajudicial statements taken in violation of his Fifth Amendment rights. (*People* v. *May, supra,* 44 Cal.3d at p. 315.)

We determined in *May* that the *Disbrow* rule was a remedial device, not a substantive right, and thus did not fall within the exception to section 28(d) for "existing statutory rule[s] of evidence relating to privilege"—in particular Evidence Code section 940. That section provides: "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him." (44 Cal.3d at p. 317.)

We distinguished our earlier holding in *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789], since that case involved the use of *legislatively compelled* self-incriminatory statements or testimony, in contrast to statements merely violative of *Miranda*. We pointed out in *May* that legislatively compelled testimony cannot be used against

the testifier for any purpose under the federal Constitution. (See *New Jersey v. Portash* (1979) 440 U.S. 450, 458-459 [59 L.Ed.2d 501, 509-510, 99 S.Ct. 1292].) We concluded: "Neither *Ramona R.* . . . nor *Portash* purports to deal with evidence seized in violation of the right against self-incrimination. They deal with the scope of the right itself rather than a remedial device to cure a constitutional violation." (*May, supra,* 44 Cal.3d at p. 318.)

We made a number of further important observations in *May* supportive of our holding therein: "[T]he 'Truth-in-Evidence' provision of our Constitution was probably intended by the California voters as a means of (1) abrogating *judicial* decisions which had required the exclusion of relevant evidence solely to deter police misconduct in violation of a suspect's constitutional rights under the state Constitution, while (2) preserving *legislatively* created rules of privilege insulating particular communications, such as the attorney-client or physician-patient privilege. As we recently observed, 'The people have apparently decided that the exclusion of evidence is not an acceptable means of implementing those rights, *except as required by the Constitution of the United States.*' (*In re Lance W., supra,* 37 Cal.3d 873, 887, italics added.) [¶] Given the probable aim of the voters in adopting section 28(d), namely, to dispense with exclusionary rules derived solely from the state Constitution, it is not reasonably likely that the California voters intended to preserve, in the form of a 'statutory' privilege, a judicially created exclusionary rule *expressly rejected* by the United States Supreme Court under the federal Constitution. (See *Harris* v. *New York, supra,* 401 U.S. 222.) In this regard, *Ramona R., supra,* 37 Cal.3d 802, is distinguishable on the further ground that its rule of use immunity was adopted in the face of conflicting signals from the federal courts regarding the necessity of such a remedy under the federal Constitution. (See [*Ramona R.,*] 37 Cal.3d at pp. 808-809.)" (*May, supra,* 44 Cal.3d at p. 318.)

■ The *Jimenez* rule was likewise a judicially declared rule of criminal procedure adopted in the face of the conflicting, less demanding federal preponderance of the evidence standard of *Lego* v. *Twomey, supra,* 404 U.S. at page 489 [30 L.Ed.2d at page 627]. It is not a rule defining a substantive right dealing with the scope of a defendant's Fifth Amendment privilege against self-incrimination, and consequently is not encompassed by Evidence Code section 940 nor exempt from the operation of section 28(d).

In adopting the beyond-a-reasonable doubt standard, the *Jimenez* court reasoned that use of the stricter standard of proof would serve to decrease the risk that an involuntary confession would be admitted (21 Cal.3d at p. 605), and further decrease the risk that a false involuntary confession would be admitted and therefore have "a salutary effect on the ultimate fact-finding process . . . ." (*Id.,* at p. 607.) We also stated our belief that

the new rule would not "unduly hamper the prosecution" given their ability "to impose adequate prosecutorial controls over the interrogation process. . . ." (*Id.*, at p. 608.)

It is clear that the goal of this court in *Jimenez* was merely to set the *degree of proof* by which the prosecution must establish the voluntariness of a defendant's extrajudicial statements. Long before *Jimenez,* both the federal and state Constitutions prohibited the introduction of involuntary confessions. (See, e.g., *Payne* v. *Arkansas* (1958) 356 U.S. 560, 561 [2 L.Ed.2d 975, 977, 78 S.Ct. 844]; *People* v. *Trout* (1960) 54 Cal.2d 576, 583 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418].) Our opinion in *Jimenez* did not attempt to redefine the scope of the Fifth Amendment privilege against self-incrimination in California. The rule established in that case was purely procedural, not substantive, and we expressly acknowledged as much: "Although the defendant urges that the privilege against self-incrimination contained in article I, section 15 of the state Constitution requires application of the reasonable doubt standard in order to fully protect the important values embodied therein, we find it unnecessary to reach the constitutional question as we conclude for the reasons set forth below that the reasonable doubt standard is required as a judicially declared rule of criminal procedure. [Citation.]" (*Jimenez, supra,* 21 Cal.3d at p. 605.)

The *Jimenez* rule reflected a policy decision, a balancing of competing values squarely at odds with that previously arrived at by the United States Supreme Court in *Lego* v. *Twomey,* in which case the high court entertained and *rejected* policy arguments similar to those accepted in *Jimenez.* The high court in *Lego* wrote: "[W]e are unconvinced that merely emphasizing the importance of the values served by exclusionary rules is itself sufficient demonstration that the Constitution also requires admissibility to be proved beyond reasonable doubt. Evidence obtained in violation of the Fourth Amendment has been excluded from federal criminal trials for many years. [Citation.] The same is true of coerced confessions offered in either federal or state trials. [Citations.] But, from our experience over this period of time no substantial evidence has accumulated that federal rights have suffered from determining admissibility by a preponderance of the evidence. Petitioner offers nothing to suggest that admissibility rulings have been unreliable or otherwise wanting in quality because not based on some higher standard. Without good cause, we are unwilling to expand currently applicable exclusionary rules by erecting additional barriers to placing truthful and probative evidence before state juries and by revising the standards applicable in collateral proceedings. Sound reason for moving further in this direction has not been offered here nor do we discern any at the present time. This is particularly true since the exclusionary rules are very much aimed at deterring lawless conduct by police and prosecution and it is very

doubtful that escalating the prosecution's burden of proof in Fourth and Fifth Amendment suppression hearings would be sufficiently productive in this respect to outweigh the public interest in placing probative evidence before juries for the purpose of arriving at truthful decisions about guilt or innocence." (*Lego* v. *Twomey, supra,* 404 U.S. at pp. 488-489 [30 L.Ed.2d at p. 627], fn. omitted.)

The beyond a reasonable doubt standard of proof required under *Jimenez* compels exclusion of confessions and admissions otherwise admissible as voluntary under the less demanding federal preponderance-of-the-evidence standard of *Lego* v. *Twomey*. Consequently, the procedural rule of *Jimenez* accomplishes what a rule founded on independent state constitutional grounds, in the wake of Proposition 8, cannot—exclusion of relevant evidence based upon a standard of proof of voluntariness more stringent than that mandated by the federal Constitution. We have explained that the intent of the electorate in passing Proposition 8 was to *curtail* the exclusion of relevant evidence based upon independent state grounds, except as required by the Constitution of the United States. (*People* v. *May, supra,* 44 Cal.3d at p. 318; *In re Lance W., supra,* 37 Cal.3d at p. 887.)

The Constitution of the United States requires no more than that the voluntariness of confessions or admissions be proved by a preponderance of the evidence at trial. (*Lego* v. *Twomey, supra,* 404 U.S. 477, 489 [30 L.Ed.2d 618, 627].) Section 28(d) establishes that standard as the rule in California.[4]

### CONCLUSION

The decision of the Court of Appeal upholding defendant's judgment of conviction is affirmed.

Lucas, C. J., Panelli, J., Kaufman, J., and Kennard, J., concurred.

**MOSK, J.**—With the utmost reluctance, I concur in the judgment. As will appear, article I, section 28, subdivision (d), of the California Constitution (hereinafter article I, section 28(d)), which is labeled "Right to Truth-in-Evidence" and was added by Proposition 8 at the June 1982 Primary Election, compels the result the majority reach. I join in that conclusion, yielding as I must to the mandate of the retrogressive Proposition 8.

---

[4] To the extent *People* v. *Azure* (1986) 178 Cal.App.3d 591 [224 Cal.Rptr. 158] is inconsistent with the views and principles expressed herein, it is disapproved.

The question here concerns the meaning of article I, section 28(d): "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782, or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press."

The precise question is whether—as the Court of Appeal held—article I, section 28(d), abrogates the "rule of criminal procedure" that we "judicially declared" in *People* v. *Jimenez* (1978) 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672]—to wit, in order to introduce a defendant's confession or admission at trial, the prosecution must prove the voluntariness of the statement *beyond a reasonable doubt* (*id.*, at p. 605). To this question, I reluctantly conclude, the answer must be affirmative.

Under Evidence Code section 351, "all relevant evidence is admissible"—including confessions or admissions probative of material issues. Under article I, section 28(d), such confessions or admissions "shall not be excluded . . . ." This provision effectively nullifies, at least as a general matter, prior California law to the contrary. The United States Constitution, of course, bars introduction of involuntary confessions or admissions—but requires voluntariness to be proved only by a preponderance of the evidence. (*Lego* v. *Twomey* (1972) 404 U.S. 477, 489 [30 L.Ed.2d 618, 627, 92 S.Ct. 619].) It is true that the savings clause of article I, section 28(d), preserves, as pertinent here, "existing *statutory* rule[s] of evidence relating to privilege . . . ." (Italics added.) The *Jimenez* rule, however, is not statutory in nature.

Therefore, I am compelled to conclude that the judgment of the Court of Appeal must be affirmed.

I must observe, however, that in Asia, Latin America, and other areas of this troubled world courageous men and women are striving, and some are dying, to *establish and expand* individual rights. It is ironic that in California our existing individual rights are being *curtailed*.

We cannot blame the United States Constitution or the United States Supreme Court for this situation. In *Pruneyard Shopping Center* v. *Robins* (1980) 447 U.S. 74 [64 L.Ed.2d 741, 100 S.Ct. 2035], Chief Justice Rehnquist, then an associate justice, stated for a unanimous court that decisions

of the federal high court do not "limit the authority of the State to exercise its police power or its sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution." (*Id.*, at p. 81 [64 L.Ed.2d at p. 752].) His words are consistent with the original design of federalism, as expressed by James Madison in *The Federalist No. 45*: "The powers reserved to the several States will extend to all the objects, which, in the ordinary course of affairs, concern the lives, liberties and properties of the people; and the internal order, improvement, and prosperity of the State." (The Federalist (Cooke ed. 1961) p. 313.)

Rather, the blame for the sorry situation in which we find ourselves must be placed squarely on Proposition 8. That ill-conceived measure has struck down California precedents on individual rights as it has encountered them in its path of destruction. (See, e.g., *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307], interring *People* v. *Disbrow* (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272]; *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], interring among other decisions *People* v. *Martin* (1955) 45 Cal.2d 755 [290 P.2d 855]; *People* v. *Warner* (1988) 203 Cal.App.3d 1122 [250 Cal.Rptr. 462], purporting to inter *People* v. *Pettingill* (1978) 21 Cal.3d 231 [145 Cal.Rptr. 861, 578 P.2d 108].) *Jimenez* is the latest casualty—and regrettably, probably not the last.

BROUSSARD, J.—I concur in the judgment under compulsion of *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307].