[No. B047602. Second Dist., Div. Six. Apr. 30, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMIRO ALCOCER et al., Defendants and Appellants.

**COUNSEL**

Ilan Funke-Bilu for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Thomas L. Willhite, Jr. and Kenneth C. Byrne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Ramiro Alcocer and William Ostini appeal from judgments following a jury's convicting them of one count of perjury (Pen. Code, § 118).[1] The trial court sentenced Alcocer to 60 days in county jail and Ostini to 80 days as a condition of felony probation, both jail terms stayed pending appeal. They contend that their self-incrimination and due process rights were violated under both the state and federal Constitutions, that the court misinstructed on circumstantial evidence over Ostini's objection, and that the trial court should have recused the entire district attorney's office. We find no prejudicial error and affirm the judgments.

### FACTS

On March 2, 1987, appellants were called to testify before a grand jury investigating alleged illegal drug use by Michael Scott, then a Santa Barbara County Municipal Court judge. Immediately before they testified but outside the proceedings, a deputy district attorney informed appellants of their right against self-incrimination and that if they did not answer questions honestly, they were subjecting themselves to potential charges of perjury. Both appellants swore to tell the truth at the grand jury hearing. Both appellants denied that cocaine was ever used at the poker games they and Michael Scott attended. Alcocer refused to answer one question because it was "highly possible" that his answer might incriminate him and responded to another question that "Once again, I'll take the Fifth on that. I refuse to answer on the grounds it might incriminate me." Ostini was aware of his "Fifth Amendment right not to testify."

At trial, Alcocer admitted that he had lied regarding illegal drug use at the poker games when he testified before the grand jury, and at least four poker players saw appellants use cocaine at one or more of the games. Ostini also conceded that his grand jury testimony regarding drug use was false.

Appellants' defense to the perjury charges was that of necessity: they testified that they were afraid of Michael Scott. Ostini said that Scott told him he would "take care of" whoever cooperated with law enforcement in the investigation against him and that Scott's bailiff relayed a threat made by Scott. Alcocer testified that another poker player, lawyer Kent Stephens with whom he consulted, advised him to deny drug use and said that if granted immunity, he would have to tell the truth. Alcocer stated that the officers interviewing him before the grand jury proceedings indicated they were

---

[1] All statutory references hereinafter are to the Penal Code unless otherwise specified.

interested only in Michael Scott. He said that Deputy District Attorney Zonen briefly discussed immunity with him but that he did not understand it clearly. He thought he could say anything and not "get in trouble." He told Zonen that he did not think he needed immunity at that time. When he refused to answer a question in the proceedings and did not desire immunity, the prosecutor said, "In that case, why don't you go ahead and answer the question, [whether he ever used cocaine] on the representation that nothing will come of that." Alcocer stated that he did not use drugs.

## DISCUSSION

### 1. *No Self-incrimination or Due Process Violations*

■ Appellants contend that their will was impermissibly overborne by the prosecutor's tactics and that on-the-record Fifth Amendment advisements were required in the grand jury proceedings. Appellants fail to persuade us that either contention is correct. In *United States* v. *Mandujano* (1976) 425 U.S. 564 [48 L.Ed.2d 212, 96 S.Ct. 1768], the Supreme Court stated that when granted immunity, a witness is obliged to testify and that perjury "simply has no place whatever. Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative. The power of subpoena, broad as it is, and the power of contempt for refusing to answer, drastic as that is—and even the solemnity of the oath—cannot insure truthful answers. Hence, Congress has made the giving of false answers a criminal act punishable by severe penalties; in no other way can criminal conduct be flushed into the open where the law can deal with it." (*Id.*, at p. 576 [48 L.Ed.2d at p. 222], fn. omitted.) The court stated that even with a statutory grant of blanket immunity, the court has found perjured testimony to fall outside the grant. (*Id.*, at p. 577 [48 L.Ed.2d at p. 223].)

Thus, *Mandujano* held that grand jury witnesses, even those targeted for indictment, may be convicted of perjury based on their false grand jury testimony even though they were not advised of their Fifth Amendment right against compelled self-incrimination before testifying. (*United States* v. *Washington* (1977) 431 U.S. 181, 182 [52 L.Ed.2d 238, 241-242, 97 S.Ct. 1814].) In *Washington*, the court was not called upon to decide whether Fifth Amendment advisements were constitutionally required in grand jury proceedings. (*Id.*, at p. 190 [52 L.Ed.2d at pp. 246-247].)

In *United States* v. *Wong* (1977) 431 U.S. 174 [52 L.Ed.2d 231, 97 S.Ct. 1823], the Supreme Court held that a witness who, while under investigation for possible criminal activity, is called to testify before a grand jury and later

indicted for perjury committed in that proceeding, is not entitled to suppression of the false testimony on the ground that no effective Fifth Amendment advisement had been given. The court stated that the Fifth Amendment privilege does not condone perjury or give one license to commit perjury. (*Id.*, at p. 177 [52 L.Ed.2d at p. 235].) Moreover, "even the predicament of being forced to choose between incriminatory truth and falsehood, as opposed to refusing to answer, does not justify perjury." (*Id.*, at p. 178 [52 L.Ed.2d at p. 235]; see also *People* v. *Genser* (1967) 250 Cal.App.2d 351 [58 Cal.Rptr. 290].)

Appellants contend that *New Jersey* v. *Portash* (1979) 440 U.S. 450 [59 L.Ed.2d 501, 99 S.Ct. 1292] and California law compel a different result. In *Portash*, the Supreme Court was called upon to decide whether a prosecutor may use a person's legislatively immunized grand jury testimony to impeach his credibility as a testifying defendant in a criminal trial. The court upheld a New Jersey Appellate Division ruling that a person's testimony before a grand jury under a grant of immunity cannot constitutionally be used to impeach him when he is a defendant in a later criminal trial. (*Id.*, at pp. 459-460 [59 L.Ed.2d at p. 510].) The Court reasoned that testimony given in response to a grant of legislative immunity is the essence of coerced testimony and that the Fifth and Fourteenth Amendments provide a privilege against *compelled* self-incrimination. (*Id.*, at p. 459 [59 L.Ed.2d at p. 510].)

Appellants argue that the scope of the right against self-incrimination as embodied in the California Constitution and in Evidence Code section 940 is substantially broader than its federal counterpart. They assert that prior California authority supports that a defendant appearing before a grand jury in answer to a subpoena does not appear voluntarily and thus the setting is coercive. (See, e.g., *People* v. *Calhoun* (1958) 50 Cal.2d 137, 147 [323 P.2d 427].) *Calhoun* held that no implication of guilt could be drawn from a defendant's relying on the federal constitutional Fifth Amendment privilege or the California counterpart found in the California Constitution and statutory immunities. (*Ibid.*)

However, whether the scope of the California constitutional and statutory right against self-incrimination is broader than the federal right is not the pertinent question: what is crucial is the remedy for violation thereof. The California Supreme Court has made clear that Proposition 8 now contained in article I, section 28, subdivision (d) of the California Constitution repealed the California exclusionary rule for violations of the constitutional privilege against self-incrimination. (*People* v. *May* (1988) 44 Cal.3d 309, 315 [243 Cal.Rptr. 369, 748 P.2d 307]; see also *People* v. *Markham* (1989) 49 Cal.3d 63, 68-71 [260 Cal.Rptr. 273, 775 P.2d 1042].) Consequently, if

on-the-record Fifth Amendment rights advisements are required in grand jury proceedings, redress for violation of those rights is now governed by federal law and exclusion of the perjured testimony cannot be had based upon independent state grounds. As discussed *ante*, violation of these constitutional rights does not result in suppression of perjured testimony.

Neither *New Jersey v. Portash, supra*, 440 U.S. 450, nor *Ramona R. v. Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789], gives appellants solace here. These cases stand for the proposition that legislatively compelled testimony cannot be used against the testifier for any purpose under the federal Constitution. (*People v. May, supra*, 44 Cal.3d 309, 317.) They discuss the scope of the right against self-incrimination and not the remedy to cure a constitutional violation. (*Ibid.*; *People v. Markham, supra*, 49 Cal.3d 63, 69.) Unlike the minor in *Ramona R.* and the defendant in *Portash*, appellants herein were not testifying under a grant of immunity or providing information that fell within a statutory immunity from use. We do not read *New Jersey v. Portash* as broadly as do appellants to mean any testimony given in grand jury proceedings can never be used against the testifier in a later proceeding because it is compelled. Appellants' testimony in the grand jury proceedings was not involuntary or coerced as a matter of law which would preclude use of their testimony for any purpose. The trial court did not err in denying their motion to suppress the grand jury statements.

2. *Circumstantial Evidence Instructions Not Prejudicially Misleading*

■ Appellants contend that the trial court erred prejudicially in instructing the jury with CALJIC No. 2.00 (5th ed.) which defines direct evidence and circumstantial evidence and states that "It is not necessary that facts be proved by direct evidence. They may be proved also by circumstantial evidence or by a combination of direct evidence and circumstantial evidence. Both direct evidence and circumstantial evidence are acceptable as a means of proof. Neither is entitled to any greater weight than the other." Section 1103a which defined the crime of perjury at the time the crimes in this case were committed, provided that "No person shall be convicted of perjury where proof of falsity rests solely upon contradiction by testimony of a single person other than the defendant. Proof of falsity may be established by direct or indirect evidence."[2] Prior to the 1969 amendment the first sentence had read: "Perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances." (Historical Note, 50B West's Ann. Pen. Code (1985 ed.) § 1103a, p. 342, hereafter Historical Note.)

---

[2]Section 1103a of the Penal Code was repealed in 1989 and reenacted in section 118.

Section 1103a has been interpreted as prescribing not only the amount but also the kind of evidence necessary to support a perjury conviction, and direct as distinguished from circumstantial evidence of the falsity of the defendant's testimony by at least one witness is generally required. (*People v. Roubus* (1966) 65 Cal.2d 218, 221 [53 Cal.Rptr. 281, 417 P.2d 865]; see Evid. Code, § 411.) Evidence is insufficient under the direct evidence rule that merely establishes facts from which the falsity of an alleged perjured statement may or may not be inferred. (*Ibid.*) *Roubus* indicated that the rule requiring proof of falsity by direct evidence has been criticized, but if it were to be abrogated, such change should be made by the Legislature. (*Id.*, at p. 222; see also *People v. O'Donnell* (1955) 132 Cal.App.2d 840, 844-845 [283 P.2d 714].)

In *People v. Di Giacomo* (1961) 193 Cal.App.2d 688, 699 [14 Cal.Rptr. 574], the reviewing court held that the court's giving both an instruction that the falsity of the defendant's statement must be proved by direct, rather than circumstantial evidence, and then instructing in wording similar to CALJIC No. 2.00 was contradictory and confusing. Nonetheless, circumstantial evidence has been found admissible for corroboration (*People v. McRae* (1967) 256 Cal.App.2d 95, 106 [63 Cal.Rptr. 854]) and, as appellants concede, the court correctly instructed that the jury could consider both direct and circumstantial evidence concerning the defense of necessity.

We note that the 1969 amendment to section 1103a added the second sentence that "Proof of falsity may be established by direct or indirect evidence." (See Historical Note, *supra*.) That section does not explain whether indirect evidence is the equivalent of circumstantial evidence, but CALJIC No. 7.23 (5th ed.) used by the trial court states that "Proof of the falsity of defendant's statement[s] may be made by direct or circumstantial evidence . . . ."

Assuming that the pre-1969 direct-evidence-of-perjury rule is still viable, we find that any error in instructing with CALJIC No. 2.00 is harmless. (*People v. Odle* (1988) 45 Cal.3d 386, 415 [247 Cal.Rptr. 137, 754 P.2d 184]; *Rose v. Clark* (1986) 478 U.S. 570, 579 [92 L.Ed.2d 460, 471, 106 S.Ct. 3101].) The evidence of perjury was not circumstantial, but direct. Both appellants admitted at trial that they lied at the grand jury proceeding and four witnesses at trial provided direct evidence which contradicted appellants' grand jury testimony. That the jury might have made inferences adverse to appellants' defense of necessity from the fact that the witnesses against them at trial had been granted immunity does not indicate a misuse of these instructions since the jury was properly instructed (at Alcocer's request) that both direct and circumstantial evidence could be used concerning the defense of necessity.

### 3. *No Abuse of Discretion In Refusing to Recuse the District Attorney's Office*

Appellants moved to recuse the entire district attorney's office, pursuant to section 1424, on grounds that the long-term interrelationship between the Santa Barbara District Attorney's Office and the major prosecution witness, Michael Scott, created substantial conflict and weakened appellants' defense. Michael Scott worked for the Santa Barbara District Attorney's Office for nine years until he became a municipal court judge. Appellants contend that he received "benign treatment" from that office in that he remained free on his own recognizance throughout his criminal proceedings and the district attorney recommended no jail time upon Scott's plea to two felony counts of possession of cocaine. (Health & Saf. Code, § 11350.) By comparison, appellants had to post bail bonds of $10,000 each and the district attorney recommended a six-month term of incarceration for appellant Alcocer.

Section 1424 requires a recusal whenever a conflict of interest exists so grave in nature to render it unlikely that the defendant would receive a fair trial. (*People v. Conner* (1983) 34 Cal.3d 141, 144 [193 Cal.Rptr. 148, 666 P.2d 5].) The power of recusal is necessary to assure fairness to the accused and to sustain public confidence in the integrity and impartiality of the criminal justice system. (*Id.*, at p. 146.) A "conflict" within the meaning of section 1424 exists "whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner." (*Id.*, at p. 148.) A court reviewing the trial court's ruling on a recusal motion applies the abuse-of-discretion standard. (*People v. Hamilton* (1988) 46 Cal.3d 123, 140 [249 Cal.Rptr. 320, 756 P.2d 1348].)

Recusal may be appropriate where substantial evidence exists that a district attorney's or deputy district attorney's animosity toward the defendant may affect other colleagues in the office. (*People v. Hamilton, supra*, 46 Cal.3d at p. 140.) A court may deny recusal where evidence of personal bias is slight and does not amount to a reasonable possibility of unfairness. (*Ibid.*) When a defendant seeks to recuse an entire prosecutorial office, defendant's showing of conflict of interest must be particularly persuasive. (*Id.*, at p. 139.)

Appellants have failed to carry their burden to justify recusal of the entire prosecutorial office. The trial court recused Deputy District Attorney Zonen, who testified at the Evidence Code section 402 hearing concerning his advisement of rights to appellants prior to the grand jury proceedings. Michael Scott cooperated with the prosecution and pled guilty to two counts which carry less severe penalties than does perjury. Appellants fail to

demonstrate that the district attorney was so biased in favor of Michael Scott and against appellants that the entire prosecutorial office should be recused. Based on the record, we find no abuse of discretion in the trial court's ruling.

The judgment is affirmed and the stay orders are vacated.

Gilbert, J., and Yegan, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 24, 1991.