Filed 8/22/14  P. v. Dufour CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C071431 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF095822) |
| v. | |
| AARON CHRISTIAN DUFOUR, | |
| Defendant and Appellant. | |

Garbed in black with a black mask and gloves, defendant Aaron Christian Dufour robbed an *ampm* gas station, a Little Caesars Pizza, and a Taco Bell over the course of several weeks.  Following the third robbery, defendant and a companion were apprehended after a high-speed chase through the streets of Davis.  A first amended information charged defendant with three counts of second degree robbery, two counts of conspiracy to commit a felony, assault with a deadly weapon, receiving stolen property, attempted perjury, dissuading a witness, and misdemeanor resisting a peace officer.  (Pen. Code, §§ 211/212.5, subd. (c), 182, subd. (a)(1), 245, subd. (a)(1), 496, subd. (a),

1

664/118, 653f, subd. (a), 148, subd. (a)(1).)[1]  A jury found defendant guilty on all counts except assault with a deadly weapon.  Sentenced to seven years eight months in prison, defendant appeals, arguing his admissions to a detective during an interview were not voluntary, insufficient evidence supports his conviction for reckless evasion, instructional error, insufficient evidence supports his conviction for receiving stolen property, and sentencing error.  We shall reverse defendant's conviction for receiving stolen property; in all other respects, we shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

After a series of robberies, a description of the getaway car led officers to engage in a high-speed chase culminating in defendant's arrest.  A first amended information charged defendant with three counts of second degree robbery (counts 1-3), two counts of conspiracy to commit a felony (counts 4 & 6), assault with a deadly weapon (count 5), receiving stolen property (count 7), attempted perjury (count 8), dissuading a witness (count 9), and misdemeanor resisting a peace officer (count 10).  The information also alleged defendant personally used a deadly weapon in the commission of counts 1 through 3.  (§ 12022, subd. (b)(1).)

Defendant entered a plea of not guilty and a jury trial followed.  The following evidence was introduced at trial.

Around midnight on an autumn evening in 2009 defendant, dressed in black with a black mask and carrying an airsoft gun, walked into an *ampm* gas station.  He pointed the airsoft gun at an employee and demanded money.  The employee complied, putting money from the cash register into a bag and handing it to defendant.  When defendant asked for lottery tickets and money from a vending machine, the employee again complied.  Defendant fled on foot.

---

[1]  All further statutory references are to the Penal Code unless otherwise designated.

Late in the evening five days later, defendant, dressed in black with a black beanie, entered a Little Caesars Pizza shop. Defendant took out an airsoft gun and demanded money from an employee. The employee put money in a bag and gave it to defendant, who fled on a bicycle.

Two weeks later defendant, dressed in black and wearing a black ski mask and gloves, entered a Taco Bell after midnight. Defendant pulled out a long, black, fake gun, pointed it at an employee, and demanded money. The employee emptied the contents of a cash register into a bag and gave it to defendant. Defendant got into a silver sedan, which left the parking lot and proceeded onto the freeway. The employee's coworker immediately pressed an alarm that called the police.

Local officers were alerted about the silver sedan. A few hours later, Officer Ly, while stopped at a red light in the southbound lane of an intersection, noticed a silver Pontiac stopped in the westbound lane. The windows were tinted and the car lacked a front license plate, two Vehicle Code violations.

Nathan Espinoza, the driver, owned the car and defendant was the passenger. The car sported a stolen license plate.

Officer Ly turned around to stop the car, but the car sped off. Officer Ly and other officers pursued the car, which led them on a chase through the city of Davis at over 100 miles per hour. The car crashed, and defendant and Espinoza fled on foot. Defendant was eventually detained near the crash site.

A search of the Pontiac yielded a black airsoft gun, a Taco Bell bag containing $304, black gloves containing defendant's DNA, and two license plates registered to the sedan. Officers also found a black Raiders beanie on the ground near the car. Defendant later admitted he had robbed the *ampm* and Little Caesars.

**Defense**

Defendant testified that on the night of the Taco Bell robbery, he was at a gym until the early morning hours. His workout partner, Espinoza, arrived to give defendant a

3

ride from the gym, and they decided to get something to eat. They stopped at a Del Taco restaurant but decided not to eat there. Espinoza saw a police car, drove onto the freeway, and sped away. When defendant asked what he was doing, Espinoza told him to shut up. Officers chased the car until Espinoza crashed. Defendant ran from the pursuing officers but was Tasered and apprehended.

Defendant admitted the gloves found in the bag were his but testified they were his workout gloves. He did not know that the rear license plate on Espinoza's sedan was stolen and denied changing the plates on the car the night of the robbery. Defendant denied agreeing with Espinoza to engage in illegal activity.

According to defendant, he had not heard about the Little Caesars or *ampm* robbery. The day of the interview, he was returning home with his daughter when detectives approached him and told him they were arresting him for the Little Caesars and *ampm* robberies. Defendant testified he "went to the interview room to not get arrested on that day," intending to give "a false confession about the two robberies he was talking about . . . to receive not going to jail that day and not promised but hopefully making it to my next court date."

The jury found defendant guilty of all counts except count 5, assault with a deadly weapon, and found the deadly weapon enhancements in counts 1, 2, and 3 not true. The court sentenced defendant to seven years eight months in prison. Defendant filed a timely notice of appeal.

## DISCUSSION

### Voluntariness of Defendant's Confession

Defendant challenges the trial court's admission of the statements he made to a detective prior to trial in which he admitted the *ampm* robbery, arguing the detective improperly induced his statement by promising not to arrest him that day. According to defendant, no evidence supports the prosecution's assertion that defendant was free to go and that the exchange was a consensual quid pro quo initiated by defendant.

4

**Background**

In December 2009 defendant was charged with the Taco Bell robbery. He was released on bail following the preliminary hearing. In May 2010 Detective Dallas Hyde contacted defendant, intending to arrest him for the *ampm* and Little Caesars robberies.

Defendant asked Hyde if he could give his girlfriend a ring he had gotten her for Mother's Day. Hyde told defendant he was "tuggin' at my heart strings." He reminded defendant that he had previously promised to make a statement about the *ampm* and Little Caesars robberies.

Defendant responded, "Does that mean if I go talk to you right now that I could be still arrested today? Or does that mean I still have the June 7th court (unintelligible)." Hyde told defendant he was not going to arrest him that day and asked defendant to make a statement.

Defendant met Hyde at the police station. After receiving his *Miranda* warnings,[2] defendant stated he committed the *ampm* and Little Caesars robberies. Defendant was not arrested at that time.

Defendant filed a motion to suppress his confession, arguing Hyde's promise not to arrest him constituted improper inducement of his statement. During the hearing on the motion, Hyde testified he approached defendant in the parking lot of defendant's apartment building. Hyde told defendant he was going to be arrested for the additional robberies. Defendant told Hyde he would like to give his girlfriend her Mother's Day gift before leaving with Hyde. Hyde replied that if defendant were willing to give a statement "about everything that had happened," Hyde would not "place him under arrest at the time."

---

[2]  *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*).

5

Hyde also testified that as he approached defendant that day he had made up his mind to arrest him. According to Hyde, defendant persuaded him not to arrest him.

The trial court denied the motion, observing: "Having listened to Officer Hyde and also reviewing the tape-recorded statement from the parking lot, I would find that no threats were made to the defendant.

"At the outset of the contact, the defendant had every reason to believe that he was going to be arrested, and in actual fact, he was not arrested that day. He was allowed to go home after he talked to Officer Hyde.

"So the only other issue relating to the voluntariness of the defendant's statement at the police department is whether that statement should be considered involuntary because Officer Hyde promised that he would not arrest him that day, that he would allow him to go home that day.

"But in this instance, it was the defendant who persuaded Officer Hyde not to arrest him, so the initiation for any benefit received by the defendant on May 5th was from the defendant's own mouth.

"And in that instance, I do not find that the defendant was the -- that the defendant made a decision based on a promise initiated by the police officer, which ultimately caused him to make the statement to the police.

"So I find that the statement made to Police Officer Hyde was voluntary; during that statement the defendant was properly Mirandized and indicated that he was not only -- he not only understood his rights but was willing to talk.

"So I find that the statement made to Officer Hyde at the Woodland Police Department will be admissible evidence in the trial to commence next Monday."

**Discussion**

Both the United States Constitution and the California Constitution forbid the use of a defendant's involuntary confession against him at trial. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 15.) The People bear the burden of proving the voluntariness of a

defendant's confession by a preponderance of the evidence. On appeal, we consider the totality of the circumstances surrounding the confession. We uphold the trial court's findings as to the circumstances of the confession if they are supported by substantial evidence. However, we independently review the trial court's finding as to the confession's voluntariness. (*People v. Markham* (1989) 49 Cal.3d 63, 65, 71; *People v. McWhorter* (2009) 47 Cal.4th 318, 346-347 (*McWhorter*).)

A confession is involuntary if it is the product of threat or violence, obtained by direct or implied promises, or secured by the exertion of improper influence. The confession and the inducement must be causally linked. In addition, a truthful confession may be found involuntary if made in consideration of an express or implied promise of lenient treatment within the justice system. (*McWhorter*, *supra*, 47 Cal.4th at p. 347.) In considering whether a confession was voluntary, the question is whether the defendant's decision to confess was not freely made because his will was overborne at the time he confessed. (*People v. Holloway* (2004) 33 Cal.4th 96, 114; *People v. Maury* (2003) 30 Cal.4th 342, 404.)

Defendant contends his statements were involuntary because they were induced by Detective Hyde's promise he would not be arrested if he agreed to speak with the detective. According to defendant, no evidence supports the trial court's finding that defendant initiated the idea of making a statement and deferring his arrest or that Detective Hyde merely acquiesced. In effect, defendant argues, by mischaracterizing the exchange between defendant and Hyde as a consensual encounter, the People transform the coercive inducement into an arm's-length exchange.

However, the evidence in the present case reveals no coercive police conduct. Detective Hyde contacted defendant, intending to arrest him. Hyde testified: "I approached him and advised him that . . . he was going to be under arrest for the additional robberies that we had already spoken about.

7

"He explained to me at that time that he thought that he had already been charged with those robberies. That came as kind of a surprise to me as well. I wasn't a hundred percent sure because sometimes things like that do happen. . . .

"Mr. Dufour then explained to me that he had just purchased a Mothers' Day ring for his girlfriend and that he would really like to give it to her before . . . he left.

"He also explained to me that he, again, thought that he had already been charged and he was just waiting for his June 7th trial date.

"And we talked about it for a little bit longer, and I believe I actually told him that he was tugging on my heart strings, and I told him 'You know, why don't you' -- I reminded him of a statement that he made to me where he told me that eventually he was going to tell me the truth about everything that had happened.

"And I asked him if he would be willing to do that today, and after he did that, that he would go home, and I would let him wait until his June 7th trial date. I would not place him under arrest at the time.

"He agreed to do so . . . ."

Nothing in this exchange hints of coercive police conduct. Detective Hyde approached defendant, intending to arrest him. Hyde reminded defendant of his previous promise to provide a statement and offered to transmit the statement to the district attorney. Defendant asked Hyde to defer his arrest so he could present his girlfriend with a ring. In response to defendant's request, Hyde agreed not to arrest defendant. We are not convinced by defendant's argument that he was under arrest and was released only after he agreed to give a statement. Rather, Hyde stated an intent to place defendant under arrest but did not act on that intent.

Under the circumstances, the evidence supports the trial court's conclusion that defendant persuaded Hyde not to arrest him. To the contrary, Hyde merely acquiesced to defendant's request to defer any arrest until he could give his girlfriend a gift. Hyde did not secure defendant's statement through any type of coercion or promise of leniency.

8

## Reckless Evasion

Defendant challenges the sufficiency of the evidence supporting his conviction for reckless evasion. According to defendant, there was not sufficient evidence that defendant drove the vehicle following the Taco Bell robbery.

### Background

The trial court granted the prosecution's motion to amend count 6 to allege a violation of Vehicle Code section 2800.2. The prosecution stated that reckless evasion was a "natural and probable consequence" of the robbery both defendants participated in. In the alternative, defendant could be found liable as an aider and abettor. Defense counsel objected.

The court found "the non-driver can be responsible for the driver's behavior in a robbery case, if the jury decides that there was a conspiracy to commit the robbery and that a natural and probable consequence of having a getaway driver involved in the robbery might be that the driver would try to evade the police and do so at any cost [¶] . . . [¶] . . . even in a reckless manner. . . . [T]hat's what the getaway driver is there for . . . to make sure they don't get caught . . . ."

The court instructed the jury on the reckless evasion charge. The court began with a general instruction on aiding and abetting: "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime.

"To prove that a defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

"1. The perpetrator committed the crime;

"2. The defendant knew that the perpetrator intended to commit the crime; and

"3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and

9

"4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime."

The court also provided specific instructions as to count 6: "To prove that Aaron Dufour is guilty of the crime charged in Count 6, that is evading a peace officer with reckless driving, the People must prove that:

"1. The defendant conspired to commit second degree robbery;

"2. A member of the conspiracy committed evading [a] peace officer while driving recklessly to further the conspiracy; and

"3. Evading a peace officer while driving recklessly was a natural and probable consequence of the common plan or design of the crime that the defendant conspired to commit."

**Discussion**

In reviewing a defendant's challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence. Substantial evidence is evidence that is credible, reasonable, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that supports the jury's verdict. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) Unless it is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) As to circumstantial evidence, even if we find the evidence reasonably susceptible to a contrary finding, we reverse only if under no hypothesis whatsoever is there sufficient evidence to support the conviction. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054; *People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Vehicle Code section 2800.2 states, in part: "(a) If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is

10

driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment . . . for not less than six months nor more than one year." Under aiding and abetting principles, "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed." (Pen. Code, § 31.) A person is liable for aiding and abetting when he or she knowingly promotes, encourages, or instigates the commission of the crime with knowledge of the unlawful purpose of the perpetrator. (*People v. Gibson* (2001) 90 Cal.App.4th 371, 386.)

An aider and abettor is guilty of all offenses that are the natural and probable consequence of the target offense. There must be a close connection between the target offense and the additional offense. An aider and abettor's culpability extends to any consequence that might reasonably have been contemplated in assisting the target offense. Whether or not the offense is the natural and probable consequence of another depends on the specific facts of each case and all the circumstances surrounding the case. (*People v. Prettyman* (1996) 14 Cal.4th 248, 289-290 (*Prettyman*); *People v. Medina* (2009) 46 Cal.4th 913, 920.)

Defendant argues there was absolutely no evidence of any act on his part that promoted, encouraged, or facilitated Espinoza's high-speed evasion. Defendant labels what might have been said or done in the vehicle "pure speculation."

However, the jury had before it sufficient evidence to find that the reckless evasion charge was the natural and probable consequence of the robbery and the conspiracy to commit robbery. Defendant acted as principal in the Taco Bell robbery, entering the establishment, pulling out a weapon, and demanding cash from the clerk. Espinoza waited in the parking lot with the car. After the robbery, Espinoza, acting as the principal, drove them away from the crime scene.

11

When two people commit a crime together, both may act in part as the actual perpetrator and in part as the aider and abettor of the other, who also acts in part as the actual perpetrator. In *People v. McCoy* (2001) 25 Cal.4th 1111, 1120, the court described a variety of these scenarios: "In [a] shooting case, one person might lure the victim into a trap while another fires the gun; in a stabbing case, one person might restrain the victim while the other does the stabbing. In either case, both participants would be direct perpetrators as well as aiders and abettors of the other. The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who the direct perpetrator or to what extent each played which role."

Here, defendant acted as principal in the robbery, with Espinoza as aider and abettor. Conversely, Espinoza acted as principal in effectuating their escape, with defendant as aider and abettor. Therefore, they were each liable for all foreseeable crimes arising out of the robbery and escape. (*Prettyman*, *supra*, 14 Cal.4th at pp. 289-290.)

Reckless evasion was a foreseeable outcome of the robbery. After the first two robberies, defendant fled the scene of the crime on foot or on a bicycle. However, when defendant planned to rob the Taco Bell, he and Espinoza decided to escape via automobile. Defendant committed the robbery and Espinoza provided the means of escape. The getaway car sported a stolen plate and officers found the stolen money in the vehicle. A reasonable juror could find that defendant and Espinoza in the process of fleeing the scene could foreseeably evade the police through reckless driving.

Defendant presents two challenges to application of the natural and probable consequences doctrine. He argues that there is no evidence he actually drove the getaway car and that Vehicle Code section 2800.2 refers to the "driver" as the party guilty of reckless evasion. Neither of defendant's arguments is convincing. Regardless of who

12

was driving, the jury could find defendant guilty of reckless evasion through the natural and probable consequences doctrine.

Finally, defendant argues that escape or flight from the scene is not interchangeable with flight from a person: "While it may be supposed that flight from the scene includes flight from persons *at the scene*, it obviously does not include flight from persons not then and there present. Respondent cites no case holding that flight from an intervening person over an hour later is a natural and foreseeable consequence of a prior antecedent and completed robbery." However, the jury could reasonably find that Espinoza and defendant's flight from Officer Ly a few hours after the robbery was a foreseeable result of holding up the Taco Bell.

### Instructional Error

Defendant contends the trial court erred in failing to instruct sua sponte on the lesser included offense of evading a police officer stemming from defendant's culpability for reckless evasion. Under defendant's analysis, if the eventual pursuit by the police was a foreseeable consequence of robbery, and reckless evasion was a naturally foreseeable consequence of robbery, so too was simple evasion.

A trial court must instruct on all offenses necessarily included in the nontarget offense if the evidence supports a finding that the lesser offense was a reasonably foreseeable consequence of the target offense but raises a question as to the foreseeability of the greater offense. However, the court has no duty to instruct "if the evidence establishes that a greater offense was a reasonably foreseeable consequence of the criminal act originally contemplated, and no evidence suggests otherwise." (*People v. Woods* (1992) 8 Cal.App.4th 1570, 1593 (*Woods*).)

Evading a police officer is a lesser included offense of recklessly evading a police officer. (Veh. Code, §§ 2208.1.) Therefore, defendant argues, the court had a sua sponte duty to provide such an instruction.

13

However, as discussed, *ante*, the evidence at trial revealed Espinoza and defendant conspired to rob the Taco Bell. Espinoza provided the means of escape; defendant committed the robbery. The getaway car had a stolen license plate, and inside, officers found the airsoft gun used in the robbery and the stolen money. Given the evidence, Espinoza's reckless evasion of pursuing officers was foreseeable, and under the natural and probable consequences doctrine, defendant could be guilty of that offense. The trial court has no duty to instruct on the lesser offense if the evidence establishes that a greater offense was a reasonably foreseeable consequence of the original criminal act and no evidence suggests otherwise. (*Woods*, *supra*, 8 Cal.App.4th at p. 1593.)

**Receiving Stolen Property**

Defendant also challenges the sufficiency of the evidence in support of his conviction for receiving stolen property. He argues there was insufficient evidence he knowingly received stolen property, the stolen license plates.

Section 496, subdivision (a) states, in part: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment . . . for not more than one year. . . ."

The elements of the crime of receiving stolen property are (1) the property was obtained by theft; (2) the defendant knew the property was so obtained; and (3) the property was received, concealed, or withheld by the defendant or the defendant aided in receiving, concealing, or withholding it. (*People v. Grant* (2003) 113 Cal.App.4th 579, 596.) Possession of stolen property may be actual or constructive and need not be exclusive. However, the defendant must have acquired a measure of control or dominion over the property. (*Ibid.*)

14

At sentencing, defense counsel objected to imposition of a consecutive sentence for receiving stolen property: "[T]here's no way any person in this courtroom . . . knows whether the license plate on a car that they are having a ride in or driving is the correct one that goes with that vehicle. And to assert that Mr. Dufour had any involvement in receiving the stolen license plate or having it on a vehicle he was riding in could have any culpability. There's no mens rea, there's no malum in se or malum prohibitum for anyone that's driving in any car." The trial court disagreed, noting "the jury saw it differently."

The prosecution presented evidence that the license plate in Espinoza's car was stolen. The jury also heard evidence that defendant knew the license plate was stolen, since the stolen plate was affixed to the back of the car and the actual plate was inside the car in which defendant was a passenger.

However, mere presence near the stolen property, or access to the information where the stolen property is found, is not sufficient evidence of possession, standing alone, to sustain a conviction of receiving stolen property. (*People v. Land* (1994) 30 Cal.App.4th 220, 224.) In *People v. Myles* (1975) 50 Cal.App.3d 423, 429, the appellate court found evidence that the defendant was a passenger in the car and found standing close to the trunk, which contained stolen goods insufficient to infer possession for a conviction of receiving stolen property. Similarly, in *People v. Zyduck* (1969) 270 Cal.App.2d 334, 336, the court found evidence the defendant was a passenger in a car with a stolen chain saw in the back seat insufficient to infer his possession of stolen property.

In the present case, the stolen license plate was on a car owned and driven by Espinoza; defendant was merely a passenger. The prosecution presented no additional facts to establish that defendant, as a passenger, had possession or control of the stolen plate. Accordingly, substantial evidence does not support defendant's conviction for receiving stolen property and we reverse that count.

**Reckless Evasion Sentence**

In the alternative, if we find defendant guilty of reckless evasion, defendant argues the trial court erred in not staying the subordinate term imposed on that count. According to defendant, his concurrent sentence for robbery and reckless evasion violates section 654 because both offenses occurred within an indivisible course of conduct.

At sentencing, the trial court designated count 3, robbery, as the principal offense and imposed the upper term of five years in state prison. The court sentenced defendant to consecutive terms of one-third the midterm on the remaining robbery counts and on the count for receiving stolen property. Finally, the court imposed a concurrent term of three years on the reckless evasion count.

Section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 prohibits multiple punishment for criminal acts that constitute a single course of criminal conduct. Whether a course of criminal conduct is divisible and gives rise to more than one act under section 654 depends upon the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for only one such offense. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

The question of whether criminal acts constitute an indivisible course of conduct is primarily a question of fact to be determined by the trial court. We uphold the trial court's determination if it is supported by substantial evidence. (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438; *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1408.)

Here, defendant initially pursued a criminal objective to rob the Taco Bell. In addition, defendant eschewed his former bicycle or on-foot escape plan and with Espinoza fled the scene in a car with a stolen license plate. The trial court determined defendant had an independent objective to avoid apprehension through criminal means,

16

resulting in his conviction for reckless evasion.  Substantial evidence supports the trial court's finding that defendant entertained "multiple criminal objectives which were independent of and not merely incidental to each other."  (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

## DISPOSITION

The judgment is reversed as to count 7, receiving stolen property.  In all other respects, the judgment is affirmed.

              RAYE        , P. J.

We concur:

      BLEASE     , J.

      HOCH      , J.