# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
ALEJANDRO GUZMAN,
Defendant and Appellant.

S242244

Second Appellate District, Division Three
B265937

Los Angeles County Superior Court
BA420611

December 5, 2019

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Chin, Corrigan, Liu, Cuéllar, Kruger and Groban concurred.

PEOPLE v. GUZMAN

S242244

Opinion of the Court by Cantil-Sakauye, C. J.

A jury convicted defendant Alejandro Guzman of two counts of committing a lewd and lascivious act upon a child after it heard a recorded phone conversation between the mother of one of the victims and defendant's niece. The mother had secretly recorded the conversation without the niece's consent, thereby violating Penal Code section 632.[1] Subdivision (d) of that section prohibits the admission of "evidence obtained . . . in violation of this section . . . in any judicial, administrative, legislative, or other proceeding." (§ 632, subd. (d) (hereafter section 632(d)).) The Court of Appeal, however, found that section 632(d) has been abrogated in the relevant part by "the 'Right to Truth in Evidence' provision of the California Constitution." (*People v. Guzman* (2017) 11 Cal.App.5th 184, 186 (*Guzman*).) The court thus concluded the recording was properly admitted and affirmed defendant's convictions.

We granted review to determine the continued viability of section 632(d) in light of the limits placed on the exclusion of evidence by the "Right to Truth-in-Evidence" provision of the Constitution. Enacted as part of Proposition 8 in 1982, the

_____

[1] All further unspecified statutory references are to the Penal Code.

provision instructs that "[e]xcept as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding."[2] (Cal. Const., art. I, § 28, subd. (f)(2) (hereafter article I, section 28(f)(2)).)[3] Within the context of defendant's criminal trial, the recording in this case was relevant evidence. By the express terms of the Right to Truth-in-Evidence provision, therefore, the recording could "not be excluded." (*Ibid.*)

We conclude that to the extent section 632(d) demanded the suppression of relevant evidence in a criminal proceeding, it was abrogated when the voters approved Proposition 8. Moreover, although the Legislature amended section 632 by a two-thirds vote several times after the enactment of Proposition 8, none of these amendments revived the exclusionary remedy of section 632(d). In each of these instances, the Legislature reenacted section 632(d) only as an incident to its enactment of other statutory provisions. Nothing in the language, history, or context of the amendments evinces an intent on the part of the Legislature to render surreptitious recordings once again inadmissible in criminal proceedings.

---

[2] As is evident from its language, the Truth-in-Evidence provision applies only in criminal cases, and nothing we say here affects the applicability of section 632(d) to other contexts.

[3] The Truth-in-Evidence provision was originally codified at article I, section 28, subdivision (d). It was subsequently redesignated as section 28, subdivision (f)(2). (*People v. Capers* (2019) 7 Cal.5th 989, 1002, fn. 6.)

Because the Court of Appeal reached the same conclusions, we affirm its judgment.

## I. BACKGROUND

A jury convicted defendant of two counts of committing a lewd and lascivious act upon a child for his inappropriate touching of 10-year-old E.F. and 12-year-old M.M. Both E.F. and M.M. knew defendant's niece, Lorena.[4] E.F. was Lorena's neighbor, and M.M., Lorena's cousin. Immediately after an incident in which defendant touched E.F., E.F. confided in Lorena and Lorena advised her to avoid defendant. Sometime thereafter, M.M. told her mother that during a sleepover she had with defendant's daughter, defendant had put his hand inside her pajamas, touched her vagina, and made her touch his penis. M.M. also told her mother that Lorena had warned her about defendant. M.M.'s mother, Esperanza, then talked to Lorena by telephone.

Without Lorena's knowledge, Esperanza recorded the conversation. Although Esperanza provided various explanations as to why she did so, she did not alert law enforcement of the existence of the recording until the day jury selection in defendant's trial was to begin.

Upon learning of the recording, the prosecution informed the court that it intended to use the recording to cross-examine Lorena, who was expected to testify for the defense. Defense

---

[4] The record discloses Lorena's surname because Lorena, several years older than either E.F. or M.M., was an adult. We nonetheless continue to identify Lorena by her given name since this was how other witnesses at trial referred to her. We likewise identify M.M.'s mother by her given name as it appears that she and M.M. may share a surname.

counsel objected, arguing that the recording was categorically inadmissible under section 632(d). The court disagreed, reasoning that insofar as section 632(d) operated to bar the admission of relevant evidence in criminal proceedings, it has been abrogated by the Right to Truth-in-Evidence provision.

A transcript of the recording was subsequently admitted into evidence. The jury thus heard Lorena making various statements that were unfavorable to defendant. For instance, Lorena said that she did not "feel good around [defendant], like when I'm wearing shorts or anything." Lorena further said that although defendant "hasn't touched me anywhere else like . . . my vagina or my breasts," she knew "he's capable of doing that" and "that's why [she] believe[s] what [M.M]'s saying." Moreover, although at trial Lorena denied that she had warned M.M. about defendant, in her phone conversation, she appeared to admit that she "told [M.M.] . . . to be careful."

After hearing from the various witnesses, the jury convicted defendant. He appealed, arguing that the trial court prejudicially erred in admitting the recording because the admission "contravened the exclusionary rule stated in Penal Code section 632, subdivision (d)." (*Guzman*, *supra*, 11 Cal.App.5th at p. 186, fn. omitted.) The Court of Appeal rejected the argument, finding that within the criminal context, section 632(d) has been rendered inoperative by Proposition 8. (*Guzman*, *supra*, 11 Cal.App.5th at p. 186.)

## II. DISCUSSION

In determining whether the Right to Truth-in-Evidence provision abrogated the exclusionary remedy of section 632(d) as that remedy applies to criminal proceedings, we undertake two separate inquiries. First, we ask whether the constitutional

provision repealed section 632(d) at the moment of its passage in 1982. Second, if it did, we examine whether the Legislature revived section 632(d) by a two-thirds vote any time thereafter, thus restoring the section's prohibition against admission of secret recordings.

## A. Whether the Exclusionary Remedy of Section 632(d) Survived the Passage of the Truth-in-evidence Provision

In 1967, the Legislature enacted section 632 as part of the Invasion of Privacy Act (§ 630 et seq.). "The purpose of the act was to protect the right of privacy by, among other things," "replacing prior laws that permitted the recording of telephone conversations with the consent of [only] one party to the conversation." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768-769.) Section 632, a multipart provision, operates to prohibit such recordings.

At issue in this case is subdivision (d), the exclusionary remedy of section 632. The wording of subdivision (d) has been modified only slightly since its enactment in 1967. In its current form, the subdivision states, "Except as proof in an action or prosecution for violation of this section, evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section is not admissible in any judicial, administrative, legislative, or other proceeding." (§ 632(d).) We focus here on the viability of the provision "to the extent it is invoked to suppress relevant evidence in a criminal proceeding." (*Guzman*, *supra*, 11 Cal.App.5th at p. 186.)

Subsequent to the enactment of the section 632, California voters acted to limit the grounds for excluding evidence at criminal trials. In 1982, the voters approved Proposition 8,

thereby amending the state Constitution. Proposition 8 contains a provision known as the Right to Truth-in-Evidence, now codified at article I, section 28(f)(2). In relevant part, the provision states: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code Sections 352, 782 or 1103." (Art. I, § 28(f)(2).)

To determine whether the constitutional right of article I, section 28(f)(2) abrogated the exclusionary remedy of section 632(d), "[w]e begin, as we must, with the express, unambiguous language of section 28[(f)(2)]." (*In re Lance W.* (1985) 37 Cal.3d 873, 886 (*Lance W.*).) Section 28(f)(2) states that "[e]xcept as provided . . . , relevant evidence shall not be excluded in any criminal proceeding." As we noted in *Lance W.*, "[t]his clearly stated command has only one apparent meaning" — to prohibit the exclusion of evidence at criminal proceedings except on those grounds expressly contemplated by the constitutional provision. (*Lance W., supra*, 37 Cal.3d at p. 886.)

Section 632(d) does not fit within any of those grounds. At the time of the passage of Proposition 8, the section was not an "existing statutory rule of evidence relating to privilege or hearsay." (Art. I, § 28(f)(2).) Nor, obviously, was it "Evidence Code Sections 352, 782 or 1103." (Art. I, § 28(f)(2).) As such, section 632(d) was not exempt from the dictate of the Right to Truth-in-Evidence provision. Hence, to the extent that section 632(d) demanded the suppression of relevant evidence at

criminal proceedings, it was superseded when the voters approved the constitutional amendment in 1982. (See *People v. Wheeler* (1992) 4 Cal.4th 284, 291 (*Wheeler*) ["section 28[(f)(2)] supersedes all California restrictions on the admission of relevant evidence except those preserved or permitted by the express words of section 28[(f)(2)] itself"].)

Not only does the language of the Right to Truth-in-Evidence provision unambiguously abrogate part of section 632(d), the history of the provision also "buttress[es] our reading of the statute." (*Scher v. Burke* (2017) 3 Cal.5th 136, 148.) Proposition 8 was a voter initiative measure, and the ballot materials relating to the proposition included this statement from the Legislative Analyst: "Under current law, certain evidence is not permitted to be presented in a criminal trial or hearing. For example, evidence obtained through unlawful eavesdropping or wiretapping, or through unlawful searches of persons or property, cannot be used in court. This measure generally would allow most relevant evidence to be presented in criminal cases, subject to such exceptions as the Legislature may in the future enact by a two-thirds vote." (Ballot Pamp., Primary Elec. (June 8, 1982) analysis of Prop. 8 by Legis. Analyst, p. 32 (Ballot Pamp.); see also *Lance W., supra*, 37 Cal.3d at p. 888, fn. 8 ["Ballot summaries and arguments are accepted sources from which to ascertain the voters' intent and understanding of initiative measures"].)[5] Because the ballot

---

[5] The Legislative Analyst also advised the voters that Proposition 8 "could not affect *federal* restrictions on the use of evidence." (Ballot Pamp., *supra,* at p. 32.) We note that federal law imposes no restriction on the admission of the recording in this case. Esperanza was not acting as a government agent in

material specifically singled out "evidence obtained through unlawful eavesdropping," which was then "not permitted to be presented in a criminal trial or hearing," and advised voters that Proposition 8 would change the law so as to "allow most relevant evidence to be presented in criminal cases," the natural inference is that Proposition 8 would permit "evidence obtained through unlawful eavesdropping" to be admitted in criminal cases. (Ballot Pamp., *supra*, at p. 32.) In essence, voters were informed that Proposition 8 would abrogate section 632(d) — and they approved.

In light of the clear language and history of the constitutional amendment, we conclude that the 1982 passage

---

taping her conversation with Lorena. As such, the Fourth Amendment to the federal Constitution poses no bar to the admission of the evidence she gathered. (See, e.g., *United States v. Jacobsen* (1984) 466 U.S. 109, 113; *Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 332-333.) Furthermore, because Esperanza consented to the recording, federal law does not prohibit the recording of the conversation between herself and Lorena. (See 18 U.S.C. § 2511(2)(d); *People v. Otto* (1992) 2 Cal.4th 1088, 1097.) Finally, even if Esperanza violated federal constitutional or statutory law in recording Lorena, she did not violate defendant's rights in doing so and defendant may not vicariously seek to suppress the recording. (See *Rakas v. Illinois* (1978) 439 U.S. 128, 133-134 [" 'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted' "]; 18 U.S.C. § 2510(11); *Alderman v. United States* (1969) 394 U.S. 165, 175, fn. 9; *People v. Otto, supra,* 2 Cal.4th at p. 1098 [explaining that "a violation of the federal statute renders the illegally obtained evidence inadmissible in state court proceedings" but that only an " 'aggrieved person,' " or "one 'who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed,' " may move to suppress the content of any such communication].)

of the Right to Truth-in-Evidence provision repealed section 632(d) to the extent the section applies to criminal proceedings. Defendant resists this conclusion, but none of the arguments he makes is persuasive.

Defendant first argues that the Right to Truth-in-Evidence provision abrogated only those exclusionary rules that were judicially created and not those that have a statutory basis like section 632(d). To be sure, some of our cases have found that the Right to Truth-in-Evidence provision abrogated judicially-created exclusionary rules. (See *Lance W.*, *supra*, 37 Cal.3d 873; *People v. May* (1988) 44 Cal.3d 309 (*May*); accord *People v. Markham*, 49 Cal.3d 63 (*Markham*).) But this is not all that the provision does. Indeed, more than once, we have found that the constitutional amendment superseded statutory provisions. (*Lance W.*, *supra*, 37 Cal.3d at p. 893 [finding that the Right to Truth-in-Evidence provision abrogated § 1538.5, subd. (a)]; *Wheeler*, *supra*, 4 Cal.4th at pp. 287-288 [holding that art. I, § 28(f)(2) abrogated the statutory rule of Evid. Code § 787]; *People v. Mickle* (1991) 54 Cal.3d 140, 168 [same]; *People v. Harris* (1989) 47 Cal.3d 1047, 1081 (*Harris*) ["section 28[(f)(2)] effected a pro tanto repeal of Evidence Code section 790"]; *People v. Ratekin* (1989) 212 Cal.App.3d 1165, 1169 [holding that the exclusionary remedy of § 631, subd. (c) has no effect in light of art. I, § 28(f)(2)].)

These cases find firm footing in the language of the Right to Truth-in-Evidence provision. As they explained, if the provision was not intended to affect statutes, there would have been "no need" for its language "to preserve some, but not all, existing *statutory* limitations on the admission of relevant evidence." (*Wheeler*, *supra*, 4 Cal.4th at p. 291; see *Harris*, *supra*, 47 Cal.3d at p. 1082 [similar].) Likewise, "[t]he grant of

authority to the Legislature to enact new exclusionary rules, but only by a two-thirds vote of each house, would be meaningless." (*Harris, supra,* 47 Cal. 3d at p. 1082; see *Wheeler, supra,* 4 Cal.4th at p. 291 [similar].) Because "[c]onstitutional provisions, like statutes, must be read in conformity with their plain language . . . and in such a manner as to give effect wherever possible to every word," we rejected the argument that the Right to Truth-in-Evidence provision left statutory rules of evidence undisturbed. (*Harris, supra,* 47 Cal. 3d at p. 1082, citation omitted.)

We do so again here. Merely because an exclusionary remedy is codified does not mean that it is beyond the reach of the Right to Truth-in-Evidence provision. Nothing in our case law or the language of the constitutional amendment supports a contention to the contrary.

Defendant's second argument likewise falls short of the mark. He contends there is no need for us to find that article I, section 28(f)(2) abrogated section 632(d) because both provisions may be given effect by excluding "the tape recording itself" but allowing Esperanza to testify to "her independent recollection of the telephone conversation to impeach Lorena." We fail to see how this proposal would give effect to the Right to Truth-in-Evidence provision. Regardless of whether Esperanza testified,[6] the tape recording is relevant evidence. (See Evid. Code, § 210; accord *Ribas v. Clark* (1985) 38 Cal.3d 355, 360-361 (*Ribas*) [stating that there is "a substantial distinction . . . between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor,

---

[6] Esperanza testified both to her recollection of events and to authenticate the recording.

whether that auditor be a person or mechanical device"]; *People v. Patton* (1976) 63 Cal.App.3d 211, 220 [holding that a "tape recording is not barred by the best evidence rule merely because a witness to the conversation is available"]; *People v. Kulwin* (1951) 102 Cal.App.2d 104, 109 [recognizing that "recordings might be more reliable and satisfactory evidence under circumstances than testimony from memory"].)  As such, our state Constitution requires that the recording "shall not be excluded" in defendant's criminal trial.  (Art. I, § 28(f)(2).)

Defendant relies heavily on *Frio v. Superior Court* (1988) 203 Cal.App.3d 1480 in trying to persuade us otherwise.  The case sheds no insight into the matter at hand.  *Frio* is a civil matter, and it is undisputed that civil, "administrative," "legislative," and other noncriminal proceedings are unaffected by Proposition 8.  (§ 632(d).)  The analysis of the scope of section 632(d) in *Frio* thus has little bearing on whether Proposition 8 abrogated the exclusionary provision in the criminal context.

For the first time on appeal, defendant contends that the Right to Truth-in-Evidence provision cannot abrogate section 632(d) without running afoul of equal protection principles.  According to defendant, "[i]f Proposition 8 abrogated section 632, subdivision (d) in criminal cases, the defendant's right to due process and equal protection would be abridged because the statute is still valid in civil cases."[7]  Defendant acknowledges that we turned back such an argument in *Lance W.* but

---

[7]    Although defendant mentions due process in passing, he does not develop the argument, choosing instead to focus on his equal protection claim.  We adopt the same focus and hold that any due process claim has been forfeited.  (See Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793.)

characterizes our rejection there as mere dicta.  It is true that in *Lance W.*, we initially expressed some skepticism about "the applicability of the exclusionary rule to civil proceedings." (*Lance W.*, *supra*, 37 Cal.3d at p. 892.)  We went on to say, however, that even if there were civil proceedings in which an exclusionary remedy applies although the same rule does not apply to criminal proceedings, "criminal defendants are not thereby denied equal protection." (*Id.* at p. 893.)  This is because criminal defendants and civil litigants are not similarly situated and it is "constitutionally permissible for the electorate" to treat them differently.    (*Ibid.* ["the public stake in criminal proceedings, and in assuring that all evidence relevant to the guilt of the accused be presented to the trier of fact, justifies the admission of evidence that would be excluded in other proceedings"].)  We do not think this basis for rejecting the equal protection claim in *Lance W.* was dictum, but even if it were, defendant has given us no reason to reconsider its merit.

We further reject defendant's argument that "the right to privacy outranks the right to truth-in-evidence" and hence section 632(d) must be given effect regardless of Proposition 8. We find no conflict between the different constitutional rights such that only one may be effectuated.  Although there is a conflict between the demands of Proposition 8 and section 632(d), this conflict does not lead inexorably to friction between Proposition 8 and the constitutional right to privacy.  Defendant claims otherwise, but his argument rests on the faulty premise that the exclusionary rule of section 632(d) is one and the same as the right to privacy itself.  Although "[i]n enacting [the Invasion of Privacy Act], the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state,'" this does not mean that substantive right of privacy —

that enshrined in article I, section 1 of our state Constitution — is coextensive with the exclusionary remedy codified in section 632(d). (*Ribas*, *supra*, 38 Cal.3d at p. 359.)

We find comparable aspects between the present context and the right to be secure from unreasonable searches and seizures. Article I, section 13 of our state Constitution protects the people's right "to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches." (Cal. Const., art. I, § 13.) In *Lance W.*, we distinguished between the right protected by article I, section 13 and the associated exclusionary rule requiring suppression of evidence seized in violation of that right. (*Lance W.*, *supra*, 37 Cal.3d at pp. 886-887.) As we explained, "the substantive scope of [article I, section 13] remains unaffected by Proposition 8" and "[w]hat would have been an unlawful search or seizure in this state before the passage of that initiative would be unlawful today." (*Id.* at p. 886.) The same cannot be said of the exclusionary rule, which was "eliminate[d]" by Proposition 8. (*Lance W.*, *supra*, 37 Cal.3d at p. 886.) But because the exclusionary rule is simply a "*remedy* for violations of the search and seizure provision[]," Proposition 8 can eliminate the exclusionary remedy without affecting the "substantive scope" of article I, section 13. (*Lance W.*, *supra*, 37 Cal.3d at pp. 886-887.) In much the same way, Proposition 8 can eliminate the exclusionary remedy of section 632(d) without affecting the substantive scope of privacy of article I, section 1, or even more narrowly, the privacy of telephone conversations. (*Lance W.*, *supra*, 37 Cal.3d at pp. 886-887.)

This is demonstrated by the fact that even after the passage of Proposition 8, surreptitious recording of telephone conversations is still prohibited. Presently, such recording is

punishable by a fine of as much as "two thousand five hundred dollars ($2,500) per violation," imprisonment in state prison of up to a year, or "both that fine and imprisonment." (§ 632, subd. (a).) For repeat offenders, the penalties increase to "ten thousand dollars ($10,000) per violation." (*Ibid.*) Furthermore, individuals who are injured by secret recordings made in violation of section 632 can bring civil actions against the perpetrators to recover statutory or actual damages. (§ 637.2, subd. (a).) Given such protective measures, we cannot say that people like Lorena have been shorn of their right to private phone conversations simply because Proposition 8 repealed the exclusionary remedy of section 632 as it applied to criminal proceedings.

Indeed, the facts of this case demonstrate why an exclusionary remedy may, at times, prove to be an ill-suited tool for protecting an individual's privacy. On the one hand, a rule like section 632(d) does little to deter a person who, like Esperanza, in recording a conversation may not have anticipated it being used in a criminal trial. The exclusionary remedy thus may do little to protect the right to privacy of individuals like Lorena. On the other hand, the remedy would benefit individuals like defendant, a person who was not recorded and whose privacy was in no way implicated. Of course, the fact that defendant was not a party to the conversation is not dispositive to our holding. But such a circumstance demonstrates the relatively attenuated relationship between the exclusionary provision of section 632(d) and the right to private communication in this case. Such a scenario provides further evidence that the exclusionary remedy and the right to privacy are not equivalent and that

section 632(d) should not afforded the status of an "inalienable right."

In sum, we find that section 632(d) did not survive the 1982 passage of the Right to Truth-in-Evidence provision. This does not end our inquiry. Because article I, section 28(f)(2) provides that exclusionary remedies may be created, or recreated, "by a two-thirds vote of the membership in each house of the Legislature," we next examine whether the Legislature revived section 632(d) after the passage of Proposition 8 by reenacting it with the requisite vote.

## B. Whether Subsequent Amendments of Section 632 Revived the Exclusionary Remedy

As the Court of Appeal noted, "the Legislature has amended section 632 numerous times since the voters passed Proposition 8 in 1982." (*Guzman*, *supra*, 11 Cal.App.5th at p. 194.) Indeed, in 1985, 1990, 1992, and 1994, the Legislature — by at least a two-thirds vote of the membership of both the Assembly and Senate — amended one or more subdivisions of section 632 and reenacted the section in its entirety.[8]

Yet, there is less to this fact than meets the eye. Although section 632 has been reenacted more than once since 1982, each time, the exclusionary remedy was reenacted only as an incident

---

[8] For a tally of the votes of the 1985, 1990, and 1992 amendments, see *Guzman*, *supra*, 11 Cal.App.5th at page 194, footnote 9. The final votes for the 1994 amendment were 76 ayes and 1 no in the Assembly and 38 ayes and 0 noes in the Senate. (Sen. Bill No. 2053, 3d reading Aug. 24, 1994, 2 Sen. Final Hist. (1993-1994 Reg. Sess.), p. 1406.)

Defendant also references a 2016 amendment to section 632. As we discuss below, however, that bill did not garner the requisite two-thirds vote of each house's membership.

to other provisions of section 632 being amended. (See Cal. Const., art. IV, § 9 ["A section of a statute may not be amended unless the section is re-enacted as amended"].) More than technical reenactment is needed to overcome Proposition 8.

Article IV, section 9 of our Constitution requires an amended statute to be reenacted. But a reenacted statute may be amended in only some parts and not others. Government Code section 9605 addresses such a situation and provides that "[i]f a section or part of a statute is amended, it is not to be considered as having been repealed and reenacted in the amended form. The portions that are not altered are to be considered as having been the law from the time when those provisions were enacted." (Gov. Code, § 9605, subd. (a).) As we explained in *Lance W.*, "[n]either article IV, section 9, nor Government Code section 9605, contemplates reenactment of the unchanged portions of an amended statute in the form of its original enactment if there have been intervening amendments of those portions." (*Lance W.*, *supra*, 37 Cal.3d at p. 895, fn. 18.) Rather, "[t]he clear intent of Government Code section 9605 is to codify the rule that the unchanged portions of the newly amended statute be 'reenacted' *as they existed immediately prior to the amendment*." (*Id.,* at p. 895, fn. 18, italics added.)

Accordingly, mere reenactment of section 632 does not necessarily revive the exclusionary rule of section 632(d). To find that a subsequent amendment of section 632 had the effect of reviving its exclusionary provision, there must be something in the "language, history, or context of the amendment[]" to support the conclusion that the Legislature intended such a result. (*In re Christian S.* (1994) 7 Cal.4th 768, 771 (*Christian S.*) [articulating this rule in a different context]; see also *Lance W.*, *supra*, 37 Cal.3d at pp. 893-896; *People v. Ewoldt* (1994)

16

7 Cal.4th 380, 391-392 (*Ewoldt*); *People v. Sullivan* (1991) 234 Cal.App.3d 56, 64.) Without evidence of such an intent, the reenactment of section 632 simply reinstates the statute as it existed at the time of reenactment — i.e., the statute, as limited by the Right to Truth-in-Evidence provision to include no exclusionary remedy. (See Gov. Code, § 9605, subd. (a); *Lance W.*, *supra*, 37 Cal.3d at p. 895, fn. 18.)

Two cases illustrate when a statutory provision may be revived by a subsequent reenactment. In *Ewoldt*, we considered an amendment to section 1101, subdivision (b). We found that the amendment revived subdivision (a) of the same section. (*Ewoldt*, *supra*, 7 Cal.4th at p. 392.) This is because changes the Legislature made to subdivision (b) "would have no effect" unless the Legislature revived subdivision (a) as well. (*Ibid.*) By contrast, in *Lance W.*, we held that an amendment to section 1538.5 did not revive subdivision (a) of that section, which had been abrogated previously by the Right to Truth-in-Evidence provision. (*Lance W.*, *supra*, 37 Cal.3d at pp. 893-894.) We reasoned that the amendment to section 1538.5 was simply a " 'clean-up' " amendment, and the Legislature cannot be presumed to have "understood or intended that such far-reaching consequences — virtually a legislative repeal of the 'Truth-in-Evidence' section of Proposition 8 — would follow an amendment so casually proposed and adopted without opposition." (*Id.* at p. 894.)

With these principles in mind, we examine the 1985, 1990, 1992, 1994 and 2016 amendments to determine whether, in light of the Constitution's Right to Truth-in-Evidence provision, the Legislature intended to revive section 632(d) in any of these instances.

### 1. 1985 Amendment

In 1985, the Legislature enacted the Cellular Radio Telephone Privacy Act, and as part of this act, amended section 632, subdivision (a). (Stats. 1985, ch. 909, §§ 1, 2.5, pp. 2900, 2901). The purpose of the act — as indicated by its name, a declaration of legislative intent accompanying the enactment, and various legislative history materials — was to protect the privacy of communications conducted via a new means of communication: cellular radio telephones. (See Stats. 1985, ch. 909, § 2, pp. 2900-2901; Legis. Counsel's Dig., Sen. Bill No. 1431 (1985-1986 Reg. Sess.) 4 Stats. 1985, Summary Dig., p. 295; Assem., 3d reading analysis of Sen. Bill No. 1431 (1985-1986 Reg. Sess.), as amended Aug. 27, 1985, p. 1; Com. on Energy and Pub. Utilities, letter to Governor George Deukmejian, Sept. 10, 1985 (letter to Governor Deukmejian).) Specifically, the act worked to "prohibit and make the same criminal penalties applicable" to intrusions on cellular radio telephone conversations as existed for landline telephone communications. (Legis. Counsel's Dig., Sen. Bill No. 1431 (1985-1986 Reg. Sess.) 4 Stats. 1985, Summary Dig., p. 295.)

The Cellular Radio Telephone Privacy Act of 1985 accomplished its purpose primarily through the enactment of section 632.5. Section 632.5 imposes the same fine and term of imprisonment on "person[s] who, maliciously and without the consent of all parties to the communication, intercept[], receive[], or assist[] in intercepting or receiving a communication transmitted between cellular radio telephones or between any cellular radio telephone and a landline telephone" as section 632 does on violators of its prohibitions. (§ 632.5, subd. (a).) In essence then, section 632.5 extends the protection available under section 632 (and other provisions) to

a new form of communication, cellular radio telephone conversations. Notably, section 632.5 contains no exclusionary provision — just as section 632 effectively did not after the passage of Proposition 8.

The Cellular Radio Telephone Privacy Act also worked a substantive change to subdivision (a) of section 632. Subdivision (a) of section 632 provides, among other things, enhanced penalties for repeat violations of certain provisions of the Invasion of Privacy Act. Before 1985, section 632, subdivision (a) read, "[i]f [a] person has previously been convicted of a violation of this section or Section 631 or 636," the person would be punished as a repeat offender. (Stats. 1976, ch. 1139, § 258, p. 5134.) With the enactment of section 632.5, the Legislature amended section 632, subdivision (a) to include the newly created section, stipulating that persons "previously convicted of a violation this section or Section 631, 632.5, or 636" would be subjected to the heightened penalties. (Stats. 1985, ch. 909, § 2.5, p. 2901.) The Legislature made no change to section 632(d). Nonetheless, to effectuate the change to section 632, subdivision (a), the Legislature reenacted section 632 in its entirety. (See Cal. Const., art. IV, § 9; *Ewoldt, supra*, 7 Cal.4th at p. 391.)

Nothing in the language, legislative history, or surrounding context of the 1985 amendment indicates that the Legislature intended to overcome the Right to Truth-in-Evidence provision and revive section 632(d). Indeed, the Legislature did not once mention the exclusionary provision. This is understandable. Prohibiting the admission of landline telephone conversations recorded in violation of section 632 would have done little to protect cellular radio telephone communications. As such, the exclusionary remedy of section

632(d) could play no role in advancing the Legislature's stated purpose of "provid[ing] a legal recourse to those persons whose private cellular radio telephone communications have been maliciously invaded." (Stats. 1985, ch. 909, § 2, pp. 2900-2901.) In fact, to the extent that the Legislature intended to "grant[] *the same* protection against eavesdropping to those who speak over cellular radio (car) telephones, as is now guaranteed to all other telephone conversations," a revival of section 632(d) would contravene that intent. (Letter to Governor George Deukmejian, *supra*, italics added.) Because section 632.5 includes no exclusionary provision, cellular radio telephone conversations would be afforded *less* protection in criminal matters than landline telephone conversation were we to infer that the exclusionary remedy of section 632(d) — after a lapse of years — had become operational again. We will not do so, given the lack of any indicia suggesting that this is what the Legislature intended.

In resisting this conclusion, defendant makes two arguments — neither of which persuades. He first contends that we do not require that "in order for an exclusionary provision to survive Proposition 8, there must be a substantive amendment to the exclusionary provision itself." The contention is true enough, but it does not help defendant. In *Ewoldt*, *supra*, 7 Cal.4th at page 391, for instance, we concluded that the Legislature revived subdivision (a) of section 1101 of the Evidence Code — whose language was unaltered — when it amended subdivision (b) of the same section and reenacted the section in its entirety. Because subdivision (b) of section 1101 clarifies the scope of subdivision (a), we reasoned that the amendment to subdivision (b) "would become a complete nullity" if subdivision (a) were not revived. (*Ewoldt*, *supra*, 7 Cal.4th at

p. 392.) Here, in contrast, nothing that the Legislature did would be nullified, or even affected, if section 632(d) remains inoperative in the face of the Right to Truth-in-Evidence provision. In other words, it is not the lack of any change to section 632(d) that leads us to the conclusion that the Legislature did not revive it. Rather, our conclusion is compelled by what the Legislature did do and by what it said it was doing — neither of which evidences any intent to revive section 632(d).

Defendant next argues that because the Legislature made a substantive change to section 632, subdivision (a), it must have revived subdivision (d) in reenacting the section as a whole. We can make little sense of this argument. We do not see how a change to one part of a statutory provision — whether technical or substantive — inexorably leads to the conclusion that another part of the provision has been revived.

In short, we conclude that section 632(d) remains abrogated by Proposition 8, despite having been reenacted in 1985. We reach the same conclusion with respect to the subsequent reenactments.

### 2. *1990 and 1992 Amendments*

The next two amendments to section 632 are similar to the 1985 amendment. In 1990, the Legislature became concerned about another new technology — cordless telephones — much as it had with regard to cellular radio telephones. (Stats. 1990, ch. 96, §§ 2, 4, pp. 3268, 3269-3270.) To provide "legal recourse to those persons whose private cordless telephone communications have been maliciously invaded," the Legislature enacted section 632.6, which mirrors section 632.5 as enacted by the Cellular Radio Telephone Privacy Act. (Stats.

1990, ch. 696, §§ 2, 4, pp. 3268, 3269-3270.) Like section 632.5, section 632.6 contains no exclusionary provision. The Legislature also amended section 632, subdivision (a) to include section 632.6 in the list of provisions whose violations subject a person to heightened punishment as a repeat offender. The Legislature then reenacted section 632 in its entirety, with section 632(d) unchanged and not otherwise mentioned.

Although section 632(d) received no mention in the either statutory text or legislative history of the 1990 amendment, Proposition 8 was briefly mentioned in the legislative materials. In a section titled "No apparent impact on rules of evidence," a Senate committee analysis states, "[section 631] subdivision (c) provides that no evidence obtained in violation of the section is admissible in any judicial, administrative, legislative or other proceeding. [¶] Given the broad language of Section 631, it appears that interception of cordless telephone communications may already be prohibited, and any evidence derived therefrom is presently inadmissible. Thus, the fact that this bill would provide greater privacy protections to a cordless telephone user than is provided under federal law does not appear to raise Proposition 8 questions." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3457 (1990-1991 Reg. Sess.) June 19, 1990, p. 4 (Judiciary Committee Analysis).)

We acknowledge that the significance of this legislative analysis is far from clear. It is puzzling that the Senate Committee would recognize that a bill "provide[s] greater privacy protections . . . than is provided under federal law" (Judiciary Committee Analysis, *supra,* at p. 4) but assert, without any explanation other than a reference to section 631 (which is similarly subject to the stricture of Proposition 8), that the proposition is not implicated. (See, e.g., *Markham, supra,*

49 Cal.3d at p. 71 ["the intent of the electorate in passing Proposition 8 was to curtail the exclusion of relevant evidence based upon independent state grounds, *except as required by the Constitution of the United States*"]; *May*, *supra*, 44 Cal.3d at p. 318.) On balance, however, the citation to Proposition 8 within a part of the analysis titled "[n]o apparent impact on rules of evidence" is some indication that the Legislature wanted to maintain the effect of Proposition 8. (Judiciary Committee Analysis, *supra,* at p. 4.) The opposite conclusion — that the Legislature intended a sea change in the law, "virtually a legislative repeal of the 'Truth-in-Evidence' section of Proposition 8" while mentioning the proposition only once in a legislative analysis — appears far less tenable. (*Lance W.*, *supra*, 37 Cal.3d at p. 894.)

As for the 1992 amendment, the Legislature during that year enacted section 632.7 to reach conduct that was not criminalized under section 632.6.[9] (Stats. 1992, ch. 298, § 6, p. 1216.) Again, like sections 632.5 and 632.6, section 623.7 has

---

[9] (Compare § 632.6, subd. (a) ["Every person who, maliciously and without the consent of all parties to the communication, intercepts, receives, or assists in intercepting or receiving a communication transmitted between cordless telephones as defined in subdivision (c), between any cordless telephone and a landline telephone, or between a cordless telephone and a cellular telephone shall be punished . . . ."] with § 632.7, subd. (a) ["Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished . . . ."].)

no exclusionary provision. And again, as it had done previously, the Legislature amended section 632, subdivision (a) to include section 632.7 in its list of offenses qualifying a person for enhanced penalties and reenacted the section. (Stats. 1992, ch. 298, § 3, p. 1214.)

For the same reasons discussed above, we find that neither the 1990 nor 1992 reenactment of section 632 revived the exclusionary remedy of section 632(d). Nothing in the amendments suggests an intent by the Legislature to overrule the effect of Proposition 8 and render evidence obtained from surreptitious recordings once again inadmissible in criminal proceedings.

### 3. *1994 and 2016 Amendments*

The 1994 and 2016 amendments differ from the previous amendments in that these amendments changed the text of section 632(d) itself. As defendant concedes, however, "the wording change does not add anything to subdivision (d)." The change does not indicate an intent to revive the substance of section 632(d), and neither does anything else in the amendments.

In 1994, the Legislature revised the Uniform Limited Partnership Act. (Legis. Counsel's Dig., Sen. Bill No. 2053 (1993-1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., p. 410.) As part of this change, the Legislature amended subdivision (b) of section 632, modifying the definition of "person" subject to section 632's prohibitions to include a "limited liability company." (Stats. 1994, ch. 1010, § 194, p. 6130.) Nothing about this change suggests an intent to revive section 632(d).

In addition to amending subdivision (b) of section 632, the Legislature also deleted the heading to each subpart of section

632. (Sen. Bill No. 2053 (1993-1994 Reg. Sess.), Legis. Serv., ch. 1010, p. 97.) Thus, subdivision (d) "no longer had the heading 'evidence.'" The change was entirely stylistic, and we cannot read into it the intent to "continue [the] operation [of the exclusionary remedy] as it had been construed and applied prior to the adoption of Proposition 8." (*Lance W., supra*, 37 Cal.3d at p. 895.)

This is not to say that the Legislature may never revive a statutory provision while making only stylistic changes to the text of the provision. Indeed, as discussed, the Legislature can reenact a provision while making no change to its language at all. (See *Ewoldt, supra*, 7 Cal.4th at p. 391.) But just as a change to the text of a provision is not necessary to make its substance operative, neither is it sufficient to effect such a result. Put differently, we do not simply look to see whether the language of a particular provision was altered, however minutely. Instead, we examine the language, legislative history, and context surrounding a legislative reenactment to discern whether the Legislature intended to revive the substance of a lapsed provision. Here, weighing against the minor textual change is the fact that "there [wa]s no discussion, not a single mention" of reviving the exclusionary remedy. (*Christian S., supra*, 7 Cal.4th at p. 782.) In addition, the Legislature was plainly concerned with something else (the Uniform Limited Partnership Act) when it amended the heading to section 632(d). To find that this change had the effect of reviving the substance of the exclusionary provision would amount to embracing legislation by inadvertence. We will not do so. (*Christian S., supra*, 7 Cal. 4th at p. 776.)

The 2016 amendment likewise does not help defendant. The amendment garnered 52 ayes and 26 noes in the Assembly

and 26 ayes and 13 noes in the Senate. (Assem. Bill No. 1671 (2015-2016 Reg. Sess.), Bill Hist.). "As the Assembly has 80 members and the Senate has 40 members (Cal. Const., art. IV, § 2, subd. (a)(1), (2))," the affirmative votes for the 2016 amendment fall (just) short of two-thirds of each house's membership. (*Guzman, supra,* 11 Cal.App.5th at p. 194, fn. 9.) Thus, the 2016 amendment could not have overridden the limitation on the exclusion of relevant evidence imposed by the Right to Truth-in-Evidence provision. (See art. I, § 28(f)(2) [providing that a statute must "hereafter [be] enacted by a two-thirds vote of the membership in each house of the Legislature" to qualify as an exception to the mandate of Prop. 8].)

Furthermore, even were we to consider the content of the 2016 amendment, we would find that it falls short. In 2016, the Legislature strengthened the penalties for violating the Invasion of Privacy Act. In particular, the Legislature amended section 632, subdivision (a) to provide that the monetary fines specified there would be imposed "per violation" of the provision. (Stats. 2016, ch. 855, § 1; Legis. Counsel's Dig., Assem. Bill No. 1671 (2015-2016 Reg. Sess.) (Assembly Bill 1671 Digest).) In addition, the Legislature changed the phrasing of section 632(d), so that it reads "evidence obtained . . . in violation of this section is not admissible" instead of "no evidence obtained . . . in violation of this section shall be admissible." (Stats. 2016, ch. 855, § 1.) The Legislature expressly declared that the alteration was a "technical, nonsubstantive change[]." (Assembly Bill 1671 Digest, *supra,* at p. 2.) We glean no intent to revive the substance of section 632(d) from such a "technical, nonsubstantive" amendment. (Assembly Bill 1671 Digest, *supra,* at p. 2.)

Having found that Proposition 8 abrogated section 632(d) and the Legislature has not acted since to overcome the effect of the proposition, we conclude that the exclusionary provision of section 632(d) posed no bar to the admission of the recording at defendant's criminal trial.

## III. DISPOSITION

For the reasons discussed above, we affirm the judgment of the Court of Appeal.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Guzman

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 11 Cal.App.5th 184
**Rehearing Granted**

_____

**Opinion No.** S242244
**Date Filed:** December 5, 2019

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Shelly Torrealba


_____

**Counsel:**

Verna Wefald, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Louis W. Karlin, Victoria B. Wilson and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Verna Wefald
65 North Raymond Avenue, #320
Pasadena, California 91103
(626) 577-2658

J. Michael Lehmann
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6205