Filed 9/18/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>ADRIAN OSVALDO VALLE,<br><br>     Defendant and Respondent. | A169080<br><br>(Sonoma County<br>Super. Ct. No. SCR-761754-1) |

The People appeal from an order of dismissal entered following the suppression of evidence obtained during a traffic stop of defendant Adrian Osvaldo Valle. We conclude that the trial court's finding that the traffic stop was unduly prolonged is unsupported by substantial evidence and that recently enacted Vehicle Code section 2806.5 (section 2806.5) does not prohibit "pretext stops" otherwise meeting Fourth Amendment standards. We therefore reverse.

## I. BACKGROUND

Valle was charged in an April 2023 complaint with three felonies: possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)); carrying a concealed firearm in a vehicle (*id.*, § 25400, subd. (a)(1)); and possession of ammunition by a prohibited person (*id.*, § 30305, subd. (a)(1)). He entered a plea of not guilty and moved to suppress the evidence of the handgun obtained as a result of a canine search of his vehicle, arguing that the search violated his Fourth Amendment right to be free from unreasonable searches

and seizures. The following evidence was presented at the August 2023 hearing on the motion to suppress, which was heard concurrently with the preliminary hearing.

On March 31, 2023 at approximately 10:00 p.m., Santa Rosa Police Officer Brett Wright was on patrol with his partner. Wright saw defendant Valle pumping gas at a local station. He recognized Valle from prior investigations as an active gang member and noticed that the vehicle did not have a front license plate. He decided he would make a traffic stop due to the missing plate. Wright did not suspect Valle of any other illegal activity at that time.

Approximately three minutes before Officer Wright and his partner stopped Valle, Wright's partner called a canine officer to assist in the traffic stop. Wright intended to have the canine conduct an open-air sniff of Valle's vehicle for possible weapons. Wright was concerned about officer safety because, in his role as an officer on the Santa Rosa Police Department Special Enforcement Team, Wright was charged with gang and firearms enforcement, and he was aware of all the investigations involving gang members in the area. He planned to stop Valle in an area known for gang activity, and two subsets of the Sureño gang, including Valle's subset, were feuding at the time. He knew that, due to the violent conflicts the two subsets were having, members of those subsets might be armed.

Wright and his partner turned their vehicle around, activated their lights and siren, followed Valle's vehicle across an overpass until they could safely pull him over, and detained him at approximately 10:03 p.m. in a parking lot less than one-quarter of a mile from the gas station. Wright approached Valle and informed him why he was being stopped. He obtained Valle's driver's license and registration and returned to his patrol car to run a

2

license check. Valle's driver's license was valid, but he had prior arrests for drugs and firearms and a felony conviction. Wright began writing a citation for the missing plate as soon as he received the results of the license check. He received those results very quickly, and writing a citation can take him anywhere from 5 to 10 minutes. He had nearly completed the citation when the canine officer arrived at approximately 10:06 p.m.

While Officer Wright remained in his patrol car writing the citation, the canine officer briefly spoke to Wright's partner and made contact with Valle. The sniff search began about two to three minutes after the canine unit arrived on the scene. It lasted between 30 seconds and one minute, when the canine alerted to the driver's side door at approximately 10:10 p.m.

When he was notified of the alert, Wright stopped writing the citation and began investigating the possible presence of a firearm in Valle's vehicle. When he looked inside the center console, Wright discovered a loaded handgun that appeared functional. Wright never completed the citation, reasoning it would be adding "insult to injury" to cite Valle in addition to arresting him.

The trial court granted the motion to suppress. Specifically, it stated: "The court finds that this was very clearly a pretextual stop. What the People miss in their argument is there was no reason not to write the citation at the gas station. This was a designed stop, they let him drive while they call for the canine. And I think that the court must take judicial notice of the [L]egislature in California and this year's session, past [*sic*] laws that make[] pretextual stops illegal. This stop under the legislation comes into effect on January 1st would absolutely be clear. But I find that it was an undue detention and a delayed detention. The entire process could have been completed, people were in a normal speed well before the dog was assembled

3

for searching. . . . It was a pretextual stop under any possible case. It would be unreasonable to even think that this happened this way. It was pretextual and it was a prolonged delay."

When the prosecutor asked the court to clarify the basis for its ruling that there was a prolonged delay, the court stated that the stop should have occurred "[a]t the gas station or immediately thereafter. It was prolonged in order to give time for the dog to come out. That's my factual finding."

The People timely appealed.

## II. DISCUSSION

### A. *The Traffic Stop Was Not Unduly Prolonged*

In *Rodriguez v. United States* (2015) 575 U.S. 348, 353 (*Rodriguez*), the Supreme Court granted certiorari to consider "whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." It answered the question "no," stating "that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." (*Id*. at pp. 350–351.)

Here, the court held that Valle's detention was unduly prolonged because the traffic stop should have begun earlier, at the gas station, rather than in the parking lot after Valle drove approximately a quarter of a mile. But by including in its calculus the time between when the police first observed Valle at the gas station and when he was pulled over, the court erred. A traffic stop begins for purposes of the Fourth Amendment when an officer pulls a vehicle over for a traffic infraction. (*People v. McDaniel* (2021)

4

12 Cal.5th 97, 129–130; accord, *People v. Ayon* (2022) 80 Cal.App.5th 926, 936 *(Ayon); id.* at pp. 937–938 ["the relevant time frame started from the point at which the car was first pulled over and ended once the dog alerted to the presence of drugs in the car"].) We know of no case holding that a Fourth Amendment seizure occurs at any time prior to effectuating the stop, and counsel for Valle has cited none. Yet, even in light of this error, we would affirm if the court's conclusion that the traffic stop was prolonged to allow for the dog sniff was supported by the evidence. There is, however, no such evidence.

" 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]' [Citation.] 'Although our review of factual determinations is deferential, it is not without limit. Factual determinations must be supported by substantial evidence.' [Citation.] To satisfy the substantial evidence standard, the evidence supporting the trial court's findings must be ' "reasonable, credible, and of solid value." ' " (*Ayon, supra*, 80 Cal.App.5th at p. 937.)

Applying this well-trod standard of review, we must reverse. Officer Wright consistently testified that it takes him between 5 and 10 minutes to write a citation. He pulled Valle over at approximately 10:03 p.m. Once he received the results of the driver's license inquiry, he began writing a citation immediately. The canine officer arrived two to three minutes later, and while Wright was writing the citation, the canine officer talked to Wright's partner and began the dog sniff. The dog alerted to Valle's vehicle about 30 seconds to a minute later, at approximately 10:10 p.m., while Officer Wright was still

5

writing the citation. Thus, the interval between the time Valle was stopped and the time the dog alerted to his vehicle was approximately seven minutes. This is both within the time Officer Wright testified it usually takes him to write a citation, and in fact, before he testified he was done writing one on this occasion. There is no evidence in this record that Valle's seizure lasted longer than the time reasonably required to write him the ticket.

*People v. Esparza* (2023) 95 Cal.App.5th 1084 (*Esparza*) is instructive. In that case, officers conducted a traffic stop for a Vehicle Code violation. (*Esparza*, at pp. 1087–1088.) After approaching the vehicle and calling for backup, an officer questioned one of the three passengers while waiting for Esparza (the driver) to produce his license. When the first backup arrived, the officer provided Esparza's license and the passenger's name and address to a detective and asked that they be run. (*Id.* at p. 1088.) Another detective arrived soon thereafter and recognized both Esparza and the passenger as gang members in contested gang territory. He reported that the passenger always carried a weapon. Officers then conducted patdown searches during which loaded guns were found, first on the passenger and then on Esparza. (*Id.* at pp. 1088–1089.) All told, the time from when the officers first approached the car to Esparza's arrest was about seven minutes. (*Id.* at p. 1089.)

The appellate court concluded under the totality of the circumstances that Esparza's search was supported by a reasonable suspicion he was armed and dangerous. (*Esparza, supra,* 95 Cal.App.5th at pp. 1091–1092.) It then turned to the question of whether the traffic stop was unduly prolonged, determining it was not. (*Id.* at p. 1093.) Rather, the court found the officer was focused on "three things simultaneously: completing the mission of the stop (which included the 'ordinary inquiry' of checking Esparza's license),

6

ensuring officer safety, and conducting additional questioning of [the passenger] while he waited for backup." (*Id.* at p. 1097.) Since the "collateral questioning" while the officers waited for backup "did not *extend* the length of the detention, given the officer safety concerns at play" (*ibid.*), the stop was not " 'prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation' " (*Rodriguez, supra*, 575 U.S. at pp. 350–351; see *Esparza*, at p. 1093).

This case is even clearer than *Esparza*. Officer Wright's partner called for backup here *before* the stop commenced based on valid officer safety concerns—i.e., they were stopping a known gang member in contested gang territory. Officer Wright began the process of writing the citation for the Vehicle Code violation expeditiously. And the dog arrived and sniffed the car for weapons while Wright was still completing the citation. There is simply no evidence that the stop which led to the seizure was unconstitutionally prolonged.

## B.     *Applicability of Section 2806.5*

The People also argue that the trial court erred to the extent it concluded that the stop was illegal because it was "pretextual." They point out that, when Valle was stopped, the state statute the trial court relied on in deeming the stop pretextual (section 2806.5) was not yet in effect. They also assert that nothing in that statute changes the federal constitutional analysis with respect to pretextual stops. The People make valid points.

Beginning January 1, 2024, a peace officer making a pedestrian or traffic stop in California has been required, before engaging in any questioning relating to "a criminal investigation or traffic violation," to inform the pedestrian or driver of the reason for the stop, unless withholding the reason is necessary to protect against an imminent threat to life or

7

property.  (§ 2806.5, subds. (a) & (b).)  By its terms, section 2806.5 did not apply to Valle's March 2023 traffic stop.  And even if it had, the record reflects that Officer Wright did inform Valle of the reason for the stop.

As described above, however, the trial court apparently also based its decision to grant the motion to suppress on its belief that the new legislation would make pretext stops illegal.  This was incorrect.  The United States Supreme Court has long held that, under the Fourth Amendment, "the constitutional reasonableness of traffic stops" does not depend "on the actual motivations of the individual officers involved."  (*Whren v. United States* (1996) 517 U.S. 806, 813 (*Whren*).)  This is because "[w]hether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting [him or her] at the time,' [citation], and not on the officer's actual state of mind at the time the challenged action was taken."  (*Maryland v. Macon* (1985) 472 U.S. 463, 470–471.)  Thus, the only pertinent inquiry is whether the officer had an objective basis for conducting the traffic stop.

As is relevant here, "the lack of a front license plate has long been recognized as a legitimate basis for a traffic stop."  (*People v. Saunders* (2006) 38 Cal.4th 1129, 1136; see also Veh. Code, § 5200, subd. (a).)  Whether the officer also had additional reasons for conducting the traffic stop does not eliminate an otherwise reasonable suspicion that a driver was violating the law.  (*Whren, supra*, 517 U.S. at pp. 812–813 [noting that in *United States v. Villamonte-Marquez* (1983) 462 U.S. 579, it "flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification"].)  In other words, "[p]retextual stops are tolerated—so long as the lawful bounds that justify the stop are observed."  (*Esparza, supra*, 95 Cal.App.5th at p. 1094.)  Indeed, in *Esparza*, discussed *ante*, the officers involved freely

8

admitted that, although they stopped the vehicle for a violation of the Vehicle Code, their "true interest" was in policing gang activity in the neighborhood. (*Esparza*, at p. 1088.)

Nothing in Assembly Bill No. 2773 (2021–2022) (Assembly Bill 2773), which contains new section 2806.5 (Stats. 2022, ch. 805, § 5), alters this Fourth Amendment jurisprudence. It is true that the legislation was originally introduced in response to concerns that the United States Supreme Court's decision in *Whren* had led to the widespread use of pretext stops and that such stops were often conducted in a racially biased manner. (Assem. Com. on Pub. Safety, Analysis of Assem. Bill 2773, Apr. 5, 2022, pp. 3–4.) As initially proposed, section 2806.5 contained a provision providing that a police officer's failure to state the reason for the stop was "grounds for filing a motion to suppress." (Assem. Bill 2773, as introduced Feb. 18, 2022, § 2.) But this provision was later removed by the Senate. (See Assem. Bill 2773, as amended Aug. 11, 2022, § 5.)[1]

Thus, as enacted, section 2806.5 merely requires notice from the police to the detainee regarding the objective reason for a stop.[2] Under the

---

[1] Its removal may have been tied to the limits placed on the exclusion of evidence by the "Right to Truth-in-Evidence" provision of the Constitution. "Enacted as part of Proposition 8 in 1982, the provision instructs that '[e]xcept as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding . . . .' " (*People v. Guzman* (2019) 8 Cal.5th 673, 677, quoting Cal. Const., art. I, § 28, subd. (f)(2).)

[2] Assembly Bill 2773 also requires an officer to document the reason for the stop on any resulting citation or police report (see § 2806.5, subd. (a)); mandates agencies employing police officers to report certain additional traffic stop data annually to the Attorney General (see Gov. Code, 12525.5, subd. (a)); and obligates the Department of Motor Vehicles to include

9

circumstances, it appears the purposes of section 2806.5 were best articulated by the Public Defender's Association, which stated in support of the legislation:  Assembly Bill 2773 " 'would increase transparency and public confidence in law enforcement by requiring an officer to immediately reassure the individual of the reason for the stop.  Unfortunately, some officers launch into a series of questions that may have no apparent relationship to any basis for the stop.  The longer the questioning goes on the more apprehensive the individual becomes of the officer's true motives.  However, when confronted by an officer they may feel compelled to answer the questions when in fact they are not required to do so.  If informed at the outset of the basis for the stop, the individual would know if any subsequent questions are legitimate or an attempt to elicit incriminating statements or acquiescence to a search.' "  (Concurrence in Sen. Amends. to Assem. Bill 2773, as amended Aug. 11, 2022, p. 2.)

In sum, section 2806.5, while serving other policy goals, has no impact on the legality of pretextual stops or the admissibility of evidence obtained during such stops.  Rather, traffic stops, whether pretextual or otherwise, remain subject to the federal constitutional limitations discussed above.  For all of the reasons we have stated, the order suppressing evidence found after the dog sniff search of Valle's vehicle must be reversed.

### III.  DISPOSITION

The trial court's orders of August 28, 2023, granting Valle's motion to suppress pursuant to Penal Code section 1538 and dismissing this action pursuant to section 1538.5 are reversed and the matter is remanded for further proceedings consistent with the views expressed in this opinion.

---

information regarding the new duties of police officers during traffic stops in the California Driver's Handbook (Veh. Code, § 1656.3. subd. (a)(5)).

SIGGINS, J.*

WE CONCUR:

BANKE, ACTING P. J.

LANGHORNE WILSON, J.

A169080
*People v. Valle*

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                    Superior Court of Sonoma County

Trial Judge:                    David B. Flinn, Judge

Counsel:


Carla C. Rodriguez, District Attorney, Anne C. Masterson, Chief Deputy District Attorney and Sarah A. Brooks, Deputy District Attorney for Plaintiff and Appellant.

Shay Dinata-Hanson, under appointment by the Court of Appeal for Defendant and Respondent.